STATE of North Dakota, Plaintiff
and Appellant,

v.

Ronald E. STUART, Defendant
and Appellee.

Criminal Nos. 950213, 950214.

Supreme Court of North Dakota.

Feb. 28, 1996.

John E. Greenwood (argued), State's Attorney, Jamestown, for plaintiff and appellant.

Ronald E. Stuart (argued), Valley City, pro se, for defendant and appellee.

MESCHKE, Justice.

The State appeals from an order dismissing two criminal charges against Ronald E. Stuart for failing to appear or post bond on traffic citations. We reverse and remand for trial.

On October 8, 1994, Stuart was stopped and cited for speeding near Carrington, North Dakota. Stuart was also cited for violating NDCC 39–06–16 by failing to produce a valid driver's license.[1] Stuart signed both citations, thereby promising to appear in court on November 2, 1994.

Stuart moved to dismiss the traffic citations on October 12, 1994, alleging insufficient process, insufficient service of process, and lack of jurisdiction. On October 17, 1994, apparently in response to a letter from Stuart, the trial court deputy clerk wrote Stuart a letter informing him that "the only way that this matter can be resolved is after a hearing," that a hearing could not be held until Stuart posted bond, and that he had to

post bond by November 9, 1994. By letter dated October 20, Stuart denied that he had requested a hearing, accused the clerk of practicing law without a license, and reiterated the deficiencies alleged in his October 12 motion to dismiss. The then trial judge replied to Stuart's letter on October 25, 1994:

> I am writing in response to your letter addressed to my [clerk].
>
> Let me assure you that [the clerk] sent the letter you received at my direction.
>
> The procedure[s] in civil traffic cases are set out in section 39–06.1–03 of the North Dakota Century Code. Penalties for not complying with these procedures are in 39–06.1–04. Copies are enclosed for your information.
>
> We will follow these procedures in processing your ticket. Therefore, if bond is not posted by November 9, 1994, your license will be suspended.

Stuart did not post bond by November 9. After giving Stuart notice and the opportunity for a hearing, the North Dakota Department of Transportation suspended Stuart's driver's license on December 5, 1994, for his reported failure to appear or post bond on the traffic citations. See NDCC 39–06–32(6). On February 15, 1995, the trial court clerk signed two complaints against Stuart, under NDCC 39–06.1–04, for failing to appear or post bond for the two traffic citations, and the trial judge had Stuart arrested.

On February 27, 1995, Stuart posted bond for the two failure-to-appear charges, received copies of the February 15 complaints, and was notified by letter that trial on the charges would begin on April 24, 1995. On both March 13 and 15, 1995, Stuart filed handwritten demands for either a formal complaint or the dismissal of the "purported Complaint." The State resisted the demands and attached copies of the two February 15 complaints. On April 24, 1995, Stuart failed to appear for trial and was arrested again.

---

1. At oral argument, Stuart asserted that he had a valid license on October 8, but declared that he "didn't care to give" it to the halting officer. It is immaterial that Stuart actually had a valid license because NDCC 39–06–16 also requires him to "display" it "upon demand" of the halting officer. Moreover, NDCC 39–06–16 directs that Stuart could not have been "convicted or assessed any court costs" if he had later produced the license in court or in the office of the halting officer.

On May 4, 1995, the State responded to Stuart's October 1994 motion to dismiss the traffic citations, asserting sufficient process and valid jurisdiction. On May 8, 1995, Stuart renewed the motion to dismiss the traffic citations, and the trial court notified him that a hearing would take place on June 12, 1995.

During the hearing, the trial court orally dismissed the two failure-to-appear charges. Citing *Powell v. Hjelle*, 408 N.W.2d 737 (N.D.1987), the trial court found that Stuart's driver's license was a "protectable property interest," that the license suspension was a "pretty big hammer over Mr. Stuart's head," and that the State's interest in prosecuting Stuart was not "all that great in this case." In dismissing the charges, the trial court also found that Stuart was "prejudiced" by "misinformation" in the former trial judge's October 1994 letter, and by the trial court's "failure to require sworn testimony or affidavit" in support of the February 15 complaints.

After a written order confirmed the oral dismissal of the failure-to-appear charges, the State appealed. *See State v. DuPaul*, 509 N.W.2d 266, 269 (N.D.1993) (order dismissing criminal charge is appealable, under NDCC 29-28-07(1), where it has same effect as "order quashing an information"). The State argues the trial court erred in finding that Stuart was prejudiced by the lack of sworn testimony or an affidavit to support the complaints, and that the court incorrectly applied *Powell* in a criminal context. Furthermore, the State argues that the "trial court went beyond the scope of [Stuart's] motions and demands to find two issues upon which to rest its decision for dismissing the two complaints." We agree that the trial court improperly dismissed the failure-to-appear charges.

The State argues the trial court incorrectly found that Stuart was prejudiced by the trial court's failure to require the complainant to give an affidavit or sworn testimony. We agree.

Our rules of procedure *require* neither an affidavit nor sworn testimony with a sworn complaint, although the magistrate *may* receive both to help confirm probable cause for the arrest:

> The complaint must be sworn to and subscribed before an officer authorized by law to administer oaths within this state and be presented to a magistrate. The magistrate *may* examine on oath the complainant and other witnesses as well as receive any affidavit filed with the complaint. *If* the magistrate examines the complainant or other witnesses on oath, the magistrate shall cause their statements to be reduced to writing and to be subscribed by the persons making them or to be recorded by a court reporter or recording equipment.

NDRCrimP 3(a) (emphasis added).[2] Because neither an affidavit nor sworn testimony are required, the trial court erred in finding that Stuart was prejudiced by their absence.

The complaints recite that the trial court clerk was "first duly sworn and examined on oath" when she made the complaints. However, the clerk testified at the June 12 hearing that she did not give any verbal testimony to the judge for the February 15 complaints. Thus, while the complaints imply the clerk gave additional testimony to support the complaints, her testimony at the June 12 hearing refutes this implication. To the extent the inclusion of this boilerplate statement in the complaints was error, we conclude it was harmless.[3]

2. This version of NDRCrimP 3(a) became effective January 1, 1995.

3. NDRCrimP 3(a) requires the complaint to be "sworn to and subscribed" by the complainant. *See also* NDCC 29-05-01. These complaints state that they were "[s]ubscribed and sworn to before" the trial judge on February 15, 1995. At oral argument, the State indicated that the trial court clerk may have signed the complaints out of the judge's presence, and then presented them to the judge for his own signature. However, the record does not confirm this assertion. Regardless, a district court clerk is required to take an oath of office, *see* NDCC 11-10-09 and 11-10-13, and this oath is sufficient to ensure the truthful execution of the complaint. *See Albrecht v. United States*, 273 U.S. 1, 6, 47 S.Ct. 250, 252, 71 L.Ed. 505 (1927) (United States Attorney's "official oath may be accepted as sufficient to give verity to the allegations of the information."). A complaint is "sworn to and subscribed" if a court clerk acknowledges his or her signature as

■ The trial court also found that Stuart was "prejudiced" by "misinformation" in the former trial judge's October 25 letter to him, but the court did not specify what the "misinformation" was, or how it harmed Stuart. We disagree that the letter "misinformed" Stuart about any aspect of the law. Rather, the letter simply directed Stuart to some of the statutes relevant to the disposition of traffic offenses, and also gave him further notice that the failure to post bond by the specified date would result in the suspension of his driver's license.

In dismissing the appeal, the trial court orally noted that these statutes "are confusing to lawyers in practice, let alone lay people." While these statutes may not be models of clarity, a "person acting as his own attorney is equally bound by applicable rules of procedure, even if he lacks understanding of those rules or the correct procedures." *Sandbeck v. Rockwell,* 524 N.W.2d 846, 851 (N.D.1994). We fail to see how the judge's effort to assist Stuart could have "prejudiced" him in any way.

The State also argues that the factors noted in *Powell,* and relied on by the trial court, should only be considered "in an administrative context, [and] not a criminal one," and that, even if *Powell* applied, the "State's interest is great in prosecuting failure to appear cases." We agree.

Before the halting officer could release Stuart from custody after the traffic stop, the officer had to obtain Stuart's signature on the citations. NDCC 39–07–08. Stuart signed a "Promise to Appear" on both traffic citations: "I hereby consent and promise to appear at the time and place specified." By signing the citations, Stuart thus promised to appear in court on November 2, 1994.[4]

After signing the citations, Stuart had several statutory options. He could have appeared at the time and place designated in the citation to try to convince the trial court to "waive, reduce, or suspend the statutory fee or bond, or both." NDCC 39–06.1–02. Or he could have appeared then and there and paid the statutory fee. *Id.* He could have posted an appearance bond equal to the amount of the statutory fee, and then forfeited the bond by failing to appear at the designated time and place. *Id.* Stuart also could have posted an appearance bond and requested a hearing under NDCC 39–06.1–03(1) "on the issue of commission of the violation charged."

■ Instead, by failing to appear without having posted an appearance bond to forfeit, Stuart admitted to committing the charged violations and probably committed a class B misdemeanor. NDCC 39–06.1–04. In addition, Stuart's failure to appear authorized the Department of Transportation under NDCC 39–06–32(6) to suspend his driver's license. *See State v. Mische,* 448 N.W.2d 412, 413–14 (N.D.1989). Stuart's license was thus properly suspended.

■ The trial court dismissed the failure-to-appear charges because it concluded that this criminal prosecution and license suspension violated due process. Relying on *Powell,* the trial court considered three factors: "the private interest that will be affected by the official ... action, the potential for governmental error, and the magnitude of the

---

the complainant to the judge, and if the judge has personal knowledge of the clerk's identity. These basic requirements were met in this case.

4. In an attempt to qualify his signature, Stuart also wrote the phrase "UCC 1–207 w/o Prejudice" in the signature block on the citations. Stuart offered this explanation of the attempt:

My use of *Without Prejudice U.C.C. 1–207* above my signature on this document indicates that I have exercised the "Remedy" provided for me in the Uniform Commercial Code in book I at section 207, whereby I may reserve my Common Law Right not to be compelled to perform under any contract, or agreement, that I have not entered into knowingly, voluntarily and intentionally. And, that reservation serves NOTICE upon all administrative agencies of government: National, State and Local that I do not, and will not, accept the liability associated with the "compelled benefit" of any unrevealed commercial agreement.

*See* NDCC 41–01–17. The issuance of a traffic citation is not a "commercial transaction" for purposes of the Uniform Commercial Code. *See* NDCC 41–01–02(2)(a) (Uniform Commercial Code is meant to "simplify, clarify, and modernize the law governing commercial transactions."). Stuart's attempted reservation of rights does not excuse his failure to appear as promised.

state's interest." *See Powell,* 408 N.W.2d at 738. After concluding Stuart's driver's license was a "protectable property interest," the trial court continued:

> And I don't know how efficient a failure to appear or post bond complaint is because of ... the magnitude of the state's interests. State's interest in this case is payment of a $41 fine. Now the court doesn't suspend licenses, but its been clear to the court that Mr. Stuart's license is suspended. And its going to continue to be suspended until he pays his $41 fine. So in light of the fact that the government has a pretty big hammer over Mr. Stuart's head right now in order to get our $41 payment of fine—I mean he obviously isn't, to me, he isn't going to pay it if he's found guilty of failure to appear or post bond, it just means one more penalty to deal with. I don't see that the magnitude of the state's interest is all that great in this case.

Still, as the State points out, the trial court's reliance on the *Powell* factors was misplaced because we specifically limited consideration of those factors to "an administrative context." *Id.* While the *Powell* factors may be relevant to whether the Department of Transportation afforded Stuart procedural due process before it suspended his license, Stuart has never formally challenged the administrative suspension, and he cannot do so here. The trial court improperly applied *Powell* in this context to incorrectly conclude, in effect, that the statutory scheme for disposition of traffic offenses is unconstitutional.

■ When a trial court is faced with a dismissal motion in a criminal context, procedural due process does not permit the court to balance the State's "interest" in prosecuting an offense against the statutory penalty for that offense. By dismissing these charges because it felt that the State had little "interest" in prosecuting Stuart, the trial court rejected a legislative determination, embodied in the enactment of NDCC 39–06.1–04, that the State has an important "interest" in prosecuting someone who fails to appear in court on a traffic violation without having first posted an appearance bond.

■ A State's Attorney has some limited discretion when deciding whether to begin a criminal prosecution. *See Keidel v. Mehrer,* 464 N.W.2d 815 (N.D.1991); *Hennebry v. Hoy,* 343 N.W.2d 87 (N.D.1983). However, a trial court does not have the discretion to dismiss a criminal charge without a sufficient legal basis to do so. Here, the trial court's asserted justifications do not adequately support the dismissal of these criminal charges.[5]

On appeal, Stuart asserts several defects in the underlying traffic citations, including insufficient process and an absence of jurisdiction, that are spurious and without merit. Stuart also attacks the validity of the citations by arguing that the State lacks the constitutional authority to require driver's licenses or to otherwise regulate drivers because he "has a constitutional right to travel, pursuant to the First and Fifth Amendments of the Constitution of the United States of America." *See Lutz v. City of York, Pa.,* 899 F.2d 255 (3d Cir.1990) (discussing constitutional right to travel while upholding ordinance outlawing "cruising"). Stuart thus argues we should affirm the trial court because

---

5. At oral argument, Stuart asserted that the trial court dismissed the charges because it found that the State's failure to respond to his October 1994 dismissal motion until May 1995 violated his right to due process. Stuart contends that the State was required to respond within ninety days. However, the trial court did not base the dismissal upon this asserted due process violation. In addition, there is evidence in the record that Stuart did not serve the State with a copy of the dismissal motion, and that the State's May 1995 response was prompted by the trial court's request that the State review the court's own file.

Even if the State had been properly served with the dismissal motion, we disagree that the State would have been obligated to respond within ninety days. If Stuart had posted an appearance bond and requested a hearing, the trial court would have been required to hold the hearing within ninety days. NDCC 39–06.1–03(1). However, Stuart failed to post an appearance bond and he expressly disclaimed any request for a hearing in his October 1994 letter to the trial court clerk. Stuart's failure to follow one of the statutory options for resolving the traffic citations constituted an admission that he committed the charged violations. NDCC 39–06.1–04. Moreover, by failing to comply with the statutes, Stuart waived the defects asserted in his dismissal motion. The State was under no obligation to respond to Stuart's motion to dismiss after he failed to properly request a hearing or to appear as promised.

the "purported statutes that [the halting officer] was operating under are unconstitutional and of no force in effect from their inception."

■ Although we have not addressed before the "right to travel" variation of the argument, we have repeatedly upheld the State's power to regulate drivers on our public roads. *See North Dakota Dep't of Transp. v. DuPaul*, 487 N.W.2d 593, 598 (N.D.1992) (although license is "important privilege," it is not "constitutionally guaranteed"); *Mische*, 448 N.W.2d at 413 ("It is well established that individuals do not have a natural right to drive a motor vehicle on a public highway ...."); *State v. Larson*, 419 N.W.2d 897, 898 (N.D.), *appeal dismissed*, 488 U.S. 805, 109 S.Ct. 36, 102 L.Ed.2d 16 (1988) (driver's license not unconstitutional "title of nobility"); *State v. Kouba*, 319 N.W.2d 161, 163 (N.D.1982) (driving is "a privilege which a person enjoys subject to the control of the State in its valid exercise of its police power"). However, we do not reach Stuart's particular constitutional claim here because it is an improper collateral attack on the underlying traffic citations.

■■ A driver cannot collaterally attack the suspension or revocation of his license when he is later criminally charged with driving under suspension or revocation. *City of Grand Forks v. Mata*, 517 N.W.2d 626, 631 (N.D.1994); *State v. Lang*, 463 N.W.2d 648 (N.D.1990), *cert. denied*, 506 U.S. 839, 113 S.Ct. 118, 121 L.Ed.2d 75 (1992); *State v. Mehlhoff*, 318 N.W.2d 314 (N.D.1982). Under the same rationale, Stuart cannot now resist the charges of failure to appear by making a collateral attack on the validity of the underlying traffic citations. *See also State v. Mertz*, 514 N.W.2d 662, 667 (N.D. 1994) (father cannot collaterally attack underlying finding of ability to pay in later criminal nonsupport proceeding). Stuart can be convicted of violating his written promise to appear "regardless of the disposition" of the underlying traffic citations. NDCC 39–07–08. The validity of the traffic citations is not an element of the failure-to-appear charges.

If Stuart wanted to contest the citations, or to challenge the State's constitutional power to require a driver's license, he should have posted an appearance bond and requested a hearing to present his arguments to the trial court. He could have then appealed an adverse finding to another court for "trial anew." NDCC 39–06.1–03(5)(a); *Zahn v. Graff*, 530 N.W.2d 645 (N.D.1995). Although we could not have reviewed that appellate court's determination that Stuart committed the charged violations on a further appeal to this court, *see* NDCC 39–06.1–03(5)(a); *State v. Walch*, 499 N.W.2d 602 (N.D.1993); *City of Bismarck v. Walker*, 308 N.W.2d 359, 364 (N.D.1981), we could have reviewed the constitutionality of the underlying statutory scheme. *See Walker*, 308 N.W.2d at 364; *City of Bismarck v. Materi*, 177 N.W.2d 530 (N.D.1970). Stuart had the opportunity to contest the citations in November 1994, and he cannot defend his failure to appear by attacking their validity now.

Stuart also asks us for a declaratory judgment that the State cannot "take away a Constitutional Right to Travel and issue a license for the same and charge a fee for it," although he did not cross-appeal. We decline to do so.

■ A district court is generally the proper place to bring a declaratory judgment action. *See* NDCC ch. 32–23. *Compare State ex rel. Lesmeister v. Olson*, 354 N.W.2d 690 (N.D.1984) (discussing rare circumstances where this court's original jurisdiction will be allowed for declaratory judgment). Moreover, when a statute is "alleged to be unconstitutional, the attorney general of the state also shall be served with a copy of the proceeding and shall be entitled to be heard." NDCC 32–23–11. *See also Ralston Purina Co. v. Hagemeister*, 188 N.W.2d 405, 408–09 (N.D.1971) (when validity of statute affecting "power and duties of public officers" is challenged, "such public officers should be made parties to the action"); *Langer v. State*, 69 N.D. 129, 143–44, 284 N.W. 238, 246 (1939) (same). We deny Stuart's request for a declaratory judgment as a procedurally inappropriate and collateral attack on the traffic citations.

We have considered Stuart's other legal arguments and they are without merit. We

conclude the trial court erred in dismissing the criminal charges against Stuart for his failure to appear or post bond. Therefore, we reverse and remand for trial.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN and LEVINE, JJ., concur.