2002 ND 142

**CITY OF FARGO, Plaintiff and Appellant,**

v.

**Nancy Michelle WONDER, Defendant and Appellee.**

**No. 20010263.**

Supreme Court of North Dakota.

Aug. 29, 2002.

Stephen R. Dawson, Assistant City Prosecutor, Fargo, for plaintiff and appellant.

Beverley Lynn Adams, Serkland Law Firm, Fargo, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] The City of Fargo appealed from an order suppressing statements made by Nancy Wonder and the results of a preliminary breath screening test administered to Wonder. We affirm.

I

[¶ 2] On April 7, 2001, law enforcement officers investigated a loud party at an apartment in Fargo. The apartment's residents allowed the police officers to enter. The officers secured the premises and did not allow anyone to leave. There is some dispute about what occurred after the officers entered.

[¶ 3] The trial court found that the officers asked those partygoers who were under the age of 21 to raise their hands. Those who were over age 21 were allowed to leave after the officers verified their ages by checking their identification. The officers asked those remaining if they had been drinking alcoholic beverages. Those under 21 were then required to take a preliminary breath screening test to determine whether they had recently consumed alcoholic beverages. At no time were the partygoers told they were free to leave, told they could refuse the breath test, or advised of their *Miranda* rights.

[¶ 4] A breath test administered to Wonder at the scene showed she had been consuming alcohol. She was arrested and charged with a violation of Fargo's ordinance prohibiting persons under 21 from purchasing, possessing, or consuming alcoholic beverages.

[¶ 5] Wonder requested a jury trial and the case was transferred from municipal court to district court. Wonder subsequently moved to suppress evidence, arguing the procedure by which the officers learned her age and that she had been drinking, without advising her of her rights under *Miranda,* was unconstitutional and required exclusion of all evidence and dismissal of the charges against her. She also argued admission of the results of the preliminary breath test would violate the statutory guidelines governing preliminary screening tests under N.D.C.C. § 39–20–14.

[¶ 6] The trial court determined Wonder had been in custody and the questioning without *Miranda* warnings violated her constitutional rights. The court also concluded the preliminary breath test constituted an improper warrantless search. The court ordered Wonder's statements and the breath test results suppressed, and the City appealed.

## II

[¶ 7] The City contends the district court erred in ordering suppression of Wonder's statements made to police in the apartment.

[¶ 8] When reviewing a district court's ruling on a motion to suppress, we defer to the district court's findings of fact and resolve conflicts in the evidence in favor of affirmance. *City of Devils Lake v. Lawrence,* 2002 ND 31, ¶ 7, 639 N.W.2d 466. We will affirm the district court's factual findings on a motion to suppress unless we conclude there is insufficient competent evidence to support the decision or the decision is contrary to the manifest weight of the evidence. *City of Jamestown v. Jerome,* 2002 ND 34, ¶ 6, 639 N.W.2d 478; *City of Jamestown v. Dardis,* 2000 ND 186, ¶ 7, 618 N.W.2d 495; *City of Fargo v. Thompson,* 520 N.W.2d 578, 581 (N.D.1994). This standard of review accords great deference to the district court's findings of fact, recognizing the district court is in a superior position to assess credibility of the witnesses and weigh the evidence. *Dardis,* at ¶ 7; *City of Mandan v. Leno,* 2000 ND 184, ¶ 6, 618 N.W.2d 161. Questions of law, however, are fully reviewable. *Lawrence,* at ¶ 7; *Dardis,* at ¶ 7.

[¶ 9] The City argues the trial court erred in suppressing Wonder's response to questions about her age. The City contends there was no evidence to support the trial court's finding that the officers asked those partygoers under age 21 to raise their hand, and that any statement about Wonder's age is subject to a "booking exception" to the *Miranda* requirements.

[¶ 10] The City does not contest the trial court's finding that Wonder was in custody for purposes of *Miranda* at all relevant times after the officers entered

the apartment. The City's arguments focus exclusively upon the "interrogation" prong of *Miranda.* Specifically, the City argues the officers asked those partygoers *over* 21, not those *under* 21, to raise their hands. The City thus asserts the question was not "directed at" Wonder or anyone else under age 21, and therefore, did not constitute "interrogation" of Wonder. The City conceded at oral argument that, if those *under* 21 were asked to raise their hands, it would constitute custodial interrogation in violation of *Miranda.*

[¶ 11] We need not reach the City's assertion that asking those under 21 to raise their hands is unconstitutional but asking those over 21 to do so is not, because we conclude there is sufficient evidence in the record to support the trial court's finding that the officers asked those under 21 to raise their hands. At the suppression hearing, the two police officers called by the City to testify gave somewhat conflicting testimony on the specific nature of the question asked. Although the officers were part of the "party patrol" that responded to the loud party at the apartment, neither of the officers who testified actually asked the disputed questions in the apartment and neither actually recalled the questions being asked. Rather, they testified about their usual practice when investigating a loud party complaint. Each testified it was common practice to ask those under 21 to raise their hands. At another point in his testimony, one of the officers testified the common practice was to ask those over 21 to raise their hands.

[¶ 12] The trial court's finding that those under 21 were asked to raise their hands is supported by sufficient competent evidence in the record. The City has conceded that asking that question would violate *Miranda.*

[¶ 13] The City also contends that *Miranda* does not apply to "[r]outine questions, common to the booking process, dealing with biographical data." In support, the City quotes *United States v. Horton,* 873 F.2d 180, 181 n. 2 (8th Cir.1989): "It is well established that *Miranda* does not apply to biographical data necessary to complete booking or pretrial services."

[¶ 14] Courts have reached conflicting viewpoints on application of *Miranda* when a booking question relates to an element of the charged offense or when a question is likely to elicit an incriminating response. Some courts hold *Miranda* simply does not apply to questioning about routine biographical data, including age, during the booking process. *See, e.g., People v. Dalton,* 91 Ill.2d 22, 61 Ill.Dec. 530, 434 N.E.2d 1127, 1129 (1982); *Watt v. State,* 412 N.E.2d 90, 97 (Ind.Ct.App.1980); *Upshaw v. State,* 350 So.2d 1358, 1364–65 (Miss.1977). Other courts, however, hold that *Miranda* bars questioning during booking about biographical data which relates directly to an element of the offense or is likely to elicit incriminating information. *See, e.g., United States v. Equihua–Juarez,* 851 F.2d 1222, 1226–27 (9th Cir. 1988), *abrogated on other grounds by Brogan v. United States,* 522 U.S. 398, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998); *United States v. Mata-Abundiz,* 717 F.2d 1277, 1280 (9th Cir.1983); *State v. Locklear,* 138 N.C.App. 549, 531 S.E.2d 853, 855 (2000). In *Pennsylvania v. Muniz,* 496 U.S. 582, 602 n. 14, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), the United States Supreme Court noted that recognizing a "booking exception" to *Miranda* does not mean that all questions asked during the booking process are permissible, and "the police may not ask questions, even during booking, that are designed to elicit incriminating admissions" without first complying with *Miranda.*

[¶ 15] We need not address this issue, however, because the interrogation at issue in this case was not routine questioning during the booking process. Rather, the questioning of the partygoers occurred before any of them were arrested and was clearly intended to establish an element of a suspected crime. Where the questioning did not arise in a "booking" setting, was related to an element of the suspected crime, and was reasonably likely to elicit an incriminating response, the "booking exception" does not apply.[1] *See United States v. Disla,* 805 F.2d 1340, 1347 (9th Cir.1986).

[¶ 16] Under these circumstances, we conclude the trial court did not err in suppressing evidence of Wonder's response to the question about her age.[2]

### III

[¶ 17] The City contends the trial court erred in suppressing the results of Wonder's preliminary breath screening test. The trial court concluded the preliminary breath test constituted a search "which was performed without a warrant and without individual, particularized suspicion directed at Defendant."

[¶ 18] Unreasonable searches and seizures are prohibited by the Fourth Amendment of the United States Constitution, made applicable to the states under the Fourteenth Amendment, and by Article I, Section 8, of the North Dakota Constitution. *City of Fargo v. Ellison,* 2001 ND 175, ¶ 9, 635 N.W.2d 151; *City of*

*Jamestown v. Dardis,* 2000 ND 186, ¶ 8, 618 N.W.2d 495. Warrantless searches are unreasonable unless they fall within one of the recognized exceptions to the warrant requirement. *Dardis,* at ¶ 9; *State v. Wanzek,* 1999 ND 163, ¶ 7, 598 N.W.2d 811. Once the defendant establishes a prima facie case, *State v. Glaesman,* 545 N.W.2d 178, 182 n. 1 (N.D.1996), the burden is then on the prosecution to show the warrantless search falls within a recognized exception to the warrant requirement. *Dardis,* at ¶ 9; *City of Fargo v. Lee,* 1998 ND 126, ¶ 8, 580 N.W.2d 580.

[¶ 19] This Court has concluded that the extraction of blood to determine blood alcohol content is a search under the Fourth Amendment. *State v. Kimball,* 361 N.W.2d 601, 604 (N.D.1985); *State v. Anderson,* 336 N.W.2d 634, 640 (N.D. 1983); *State v. Abrahamson,* 328 N.W.2d 213, 216 (N.D.1982). Similarly, it is well-settled that administration of a breath test to determine alcohol consumption is a search. *See, e.g., Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 616–17, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Burnett v. Municipality of Anchorage,* 806 F.2d 1447, 1449 (9th Cir.1986); *Blank v. State,* 3 P.3d 359, 366 (Alaska Ct.App. 2000); *Blair v. Commonwealth,* 115 Pa. Cmwlth. 293, 539 A.2d 958, 960 (1988); *State v. Locke,* 418 A.2d 843, 846–47 (R.I. 1980); 1 Wayne R. LaFave, *Search and Seizure* § 2.6(a) (1996). We conclude the administration of the preliminary breath test to Wonder constituted a search. Con-

---

1. The City argues it should be allowed to introduce evidence of Wonder's age acquired during the actual booking process. The district court's order only suppressed Wonder's responses to the officer's questioning at the apartment. The admissibility of any statements made by Wonder during the actual booking process at the police station is not before us on appeal.

2. The trial court also suppressed Wonder's response to questions asking whether she had been drinking alcohol. The City has not specifically challenged that part of the suppression order and, in fact, argues no such questions were asked of Wonder. The City concedes that, if such questions were asked, it was improper custodial interrogation in violation of *Miranda.*

sequently, the City had the burden of establishing that the search fell within a recognized exception to the warrant requirement.

[¶ 20] The City contends Wonder voluntarily consented to the breath test. Consent is a recognized exception to the warrant requirement. *Ellison*, 2001 ND 175, ¶ 11, 635 N.W.2d 151; *Dardis*, 2000 ND 186, ¶ 9, 618 N.W.2d 495. Only consent which is voluntarily given will validate the search, and the consent must not be coerced by explicit or implicit means or by implied threat or covert force. *See Ellison*, at ¶ 13; *State v. DeCoteau*, 1999 ND 77, ¶ 9, 592 N.W.2d 579.

[¶ 21] There was conflicting evidence whether Wonder consented to the breath test. One of the police officers testified that, as a matter of routine, "we always make sure we get consent from the people before doing any breath tests." The officer did not, however, administer the breath test to Wonder and did not have personal knowledge whether Wonder was asked to consent. The officer further stated that all of those under–21 were routinely asked to take a breath test and were not free to leave until officers determined whether or not they had been drinking. *Cf. United States v. Drayton*, —— U.S. ——, ——–——, 122 S.Ct. 2105, 2112–14, 153 L.Ed.2d 242 (2002) (concluding officers' failure to advise bus passengers of their right not to cooperate or to refuse to consent to searches did not violate the Fourth Amendment where the officers gave the passengers no reason to believe they were required to answer questions and nothing was said to suggest to a reasonable person that he or she was not free to leave the bus or otherwise terminate the encounter).

[¶ 22] Based upon this evidence, the trial court found that the officers had indicated to Wonder and the other under 21 partygoers that they "would not be able to leave until they submitted to a preliminary breath test" and "a reasonable person in Defendant's position would not have felt free to refuse the police officers' questions or the preliminary breath test." Upon our review of the record, we conclude there is sufficient evidence to support the trial court's findings and they are not contrary to the manifest weight of the evidence.

[¶ 23] We further note that Wonder was not under arrest when she was given the preliminary breath test, and there was no evidence presented that the officers had observed any of the customary outward manifestations of alcohol consumption by Wonder, such as glassy eyes, slurred speech, or the odor of alcohol. Rather, the trial court's findings indicate the officers on the scene detained all partygoers who could not present identification showing they were over 21, conducted custodial interrogation seeking to elicit incriminating responses without complying with *Miranda*, and then required the partygoers to submit to breath tests. There is no indication that the officers had an individualized, particularized suspicion or probable cause to believe that Wonder had committed a crime. Mere presence at the scene of a crime is not sufficient to support a warrantless search. *See State v. Serr*, 1998 ND 66, ¶ 14, 575 N.W.2d 896; *State v. Gilberts*, 497 N.W.2d 93, 97 (N.D.1993).

[¶ 24] We conclude the City has failed to establish the warrantless search falls within one of the recognized exceptions to the warrant requirement, and the trial court did not err in suppressing the results of the preliminary breath test.

IV

[¶ 25] Wonder has moved to strike portions of the City's appendix for violations of the North Dakota Rules of

Appellate Procedure and seeks costs for bringing the motion.

[¶ 26] Under N.D.R.App.P. 30(a), only items actually in the record may be included in the appendix, and a signature on the appellate brief under N.D.R.App.P. 28 certifies compliance with this rule. *Community Nat'l Bank of Grand Forks v. Husain*, 1999 ND 201, ¶ 13, 600 N.W.2d 886; *Hurt v. Freeland*, 1997 ND 194, ¶ 11, 569 N.W.2d 266. The City concedes it included in its appendix two documents which were not part of the record, and referenced one of those documents in its argument in the briefs.

 [¶ 27] This Court applies N.D.R.App.P. 13 as an enforcement tool to encourage compliance with the North Dakota Rules of Appellate Procedure. *Husain*, 1999 ND 201, ¶ 13, 600 N.W.2d 886; *Hurt*, 1997 ND 194, ¶ 12, 569 N.W.2d 266. The determination whether to administer sanctions under Rule 13 for noncompliance with the Rules of Appellate Procedure lies wholly within the discretion of this Court. *Husain*, at ¶ 13; *Hurt*, at ¶ 13; *Lake Region Credit Union v. Crystal Pure Water, Inc.*, 502 N.W.2d 524, 528 (N.D.1993). In order to encourage respect for and compliance with the appellate rules, we have on numerous occasions assessed sanctions for failure to comply with the rules governing preparation of the appendix on appeal. *See Husain*, at ¶¶ 13–14; *Hurt*, at ¶¶ 9–15; *Sternberger v. City of Williston*, 556 N.W.2d 288, 290 n. 1 (N.D.1996); *Lake Region Credit Union*, at 528; *Bye v. Federal Land Bank Ass'n*, 422 N.W.2d 397, 398–99 (N.D.1988); *In re Estate of Raketti*, 340 N.W.2d 894, 897–98 (N.D.1983).

[¶ 28] We grant Wonder's motion to strike the improper materials from the appendix and we assess costs in the amount of $486.00 against the City to compensate Wonder for her costs in preparing the motion for sanctions.

V

[¶ 29] We have considered the remaining arguments raised by the City and find them to be without merit.

[¶ 30] The order suppressing evidence is affirmed. Wonder's motion for sanctions is granted and we assess costs for bringing the motion in the amount of $486.00 against the City.

[¶ 31] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ.