2014 ND 119

**Ronald Dale McCOY, Petitioner and Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Defendant and Appellee.**

No. 20130300.

Supreme Court of North Dakota.

June 24, 2014.

Rehearing Denied July 17, 2014.

Thomas F. Murtha IV, Dickinson, N.D., for petitioner and appellant.

Michael T. Pitcher, Office of Attorney General, Bismarck, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Ronald Dale McCoy appeals from a district court judgment affirming a Department of Transportation decision suspending his driving privileges for 180 days. We affirm because McCoy consented to take the chemical breath test given by the law enforcement officer and McCoy's constitutional rights were not violated as a matter of law by North Dakota's implied consent law.

I

[¶ 2] In March 2013, a Stark County sheriff's deputy stopped a vehicle that appeared to not have a light illuminating the license plate. The vehicle was driven by McCoy. While speaking with McCoy, the deputy noticed an odor of alcohol and McCoy's eyes appeared bloodshot and watery. McCoy admitted he had been drink-

ing earlier in the day, but no evidence was presented about how much or at what time the alcohol had been consumed. McCoy agreed to field sobriety testing. Although McCoy passed the walk-and-turn test, he failed the horizontal gaze nystagmus test and the one-legged-stand test. After McCoy failed the tests, the deputy gave the North Dakota implied consent advisory, requested McCoy take an onsite screening test and administered an onsite breath test. This test showed an alcohol concentration of.196. The deputy arrested McCoy for driving a vehicle while under the influence of intoxicating liquor.

[¶ 3] The deputy transported McCoy to the law enforcement center and again read McCoy the implied consent advisory. McCoy agreed to take the chemical breath test. The deputy administered the Intoxilyzer 8000, which revealed an alcohol concentration of .203. The deputy issued McCoy a report and notice of the Department's intent to suspend his driving privileges. McCoy requested an administrative hearing.

[¶ 4] In April 2013, a hearing was held before a Department hearing officer, who subsequently issued findings of fact, conclusions of law and a decision suspending McCoy's driving privileges for 180 days. The hearing officer found McCoy agreed to take a chemical breath test:

"After transport to the law enforcement center, the implied consent advisory was given and Mr. McCoy agreed to take a chemical breath test. Deputy Sarnicki is certified to administer the Intoxilyzer 8000. Deputy Sarnicki administered the Intoxilyzer 8000 according to the state toxicologist's approved method at 11:52 PM. The result was .203 AC. The report and notice was issued to Mr. McCoy."

Addressing McCoy's argument that North Dakota's implied consent law violates his constitutional rights, the hearing officer concluded:

"The last objection made by Mr. McCoy is that the implied consent law violates his constitutional protections. The argument in sum is that the Supreme Court of the United States recently issued an opinion from a case out of Missouri [*Missouri v. McNeely*, —— U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013)]. In that case the Supreme Court determined that a blood sample obtained by force and without a warrant after the Missouri driver had refused to be tested violated the Missouri driver's constitutional rights. There are several important distinctions that must be made. First the blood sample was used in a criminal case against the Missouri driver. This hearing is not a criminal proceeding. Second the Missouri driver had no right of refusal in contrast to North Dakota which allows a right of refusal in regards to the implied consent statutes. Third the issue of consent. The NDCC states any individual who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter. Mr. McCoy argues that this is not freely given consent, that it is in fact coerced consent which is not allowed as an exception to a warrantless search. The right to drive is not a constitutional right, it is a privilege."

[¶ 5] McCoy appealed to the district court, which affirmed the hearing officer's decision.

## II

[¶ 6] This Court reviews the Department's decision to suspend a person's driving privileges under the Adminis-

trative Agencies Practice Act, N.D.C.C. ch. 28–32. *Painte v. Dir., Dep't of Transp.,* 2013 ND 95, ¶ 6, 832 N.W.2d 319. When an administrative agency's decision is appealed from the district court, we review the agency's decision. *Id.* Generally, "[c]ourts exercise limited review in appeals from administrative agency decisions, and the agency's decision is accorded great deference." *Id.* (citation omitted). This Court reviews an agency's decision under N.D.C.C. § 28–32–49 in the same manner as the district court under N.D.C.C. § 28–32–46. *Painte,* at ¶ 6.

[¶ 7] We must affirm the agency's decision unless:

"1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46. Although we review the agency's findings and conclusions, "the district court's analysis is entitled to respect if it is sound." *Daniels v. Ziegler,* 2013 ND 157, ¶ 5, 835 N.W.2d 852 (citation omitted).

[¶ 8] "When reviewing an administrative agency's decision, we determine 'only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record.'" *Yellowbird v. N.D. Dep't of Transp.,* 2013 ND 131, ¶ 8, 833 N.W.2d 536 (citation omitted). This Court does not make independent findings or substitute its judgment. *Id.* Once the facts are established, their significance presents a question of law, which we review de novo. *Bell v. N.D. Dep't of Transp.,* 2012 ND 102, ¶ 20, 816 N.W.2d 786. Our "standard of review for a claimed violation of a constitutional right is de novo." *Martin v. N.D. Dep't of Transp.,* 2009 ND 181, ¶ 5, 773 N.W.2d 190 (citation omitted).

### III

[¶ 9] McCoy's sole issue is that the Department hearing officer erred in its conclusions of law because the breath test taken by law enforcement constituted a warrantless search and the Department failed to establish an exception to the warrant requirement. McCoy therefore contends the hearing officer's decision violated his constitutional rights under U.S. Const. amend. IV and N.D. Const. art. I, § 8.

### A

[¶ 10] Unreasonable searches and seizures are prohibited under U.S. Const. amend. IV and N.D. Const. art. I, § 8. *See Hoover v. Director, N.D. Dep't of Transp.,* 2008 ND 87, ¶ 15, 748 N.W.2d 730; *City of Fargo v. Wonder,* 2002 ND 142, ¶ 18, 651 N.W.2d 665. "[I]t is well-settled that administration of a breath test to determine alcohol consumption is a search." *Wonder,* at ¶ 19; *see also Skin-*

*ner v. Railway Labor Execs.' Ass'n,* 489 U.S. 602, 616–17, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). "Warrantless searches are unreasonable unless they fall within one of the recognized exceptions to the warrant requirement." *Wonder* at ¶ 18. Consent is one exception to the warrant requirement. *See Hoover,* at ¶ 15; *Wonder,* at ¶ 20. "To be effective, consent must be voluntarily given under the totality of the circumstances and 'must not be coerced by explicit or implicit means or by implied threat or covert force.'" *Hoover,* at ¶ 15 (quoting *State v. Avila,* 1997 ND 142, ¶ 16, 566 N.W.2d 410). "The Department has the burden of establishing an exception to the warrant requirement." *Hoover,* at ¶ 15 (citing *State v. Graf,* 2006 ND 196, ¶ 9, 721 N.W.2d 381).

[¶ 11] At the time of McCoy's stop, North Dakota's implied consent law provided:

"Any individual who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state *is deemed to have given consent, and shall consent,* subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, or urine for the purpose of determining the alcohol concentration or presence of other drugs, or combination thereof, in the individual's blood, breath, or urine.... The test or tests must be administered at the direction of a law enforcement officer *only after placing the individual ... under arrest and informing that individual that the individual is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof....* The law enforcement officer shall also inform the individual charged that *refusal of the individual to submit*

*to the test determined appropriate will result in a revocation* for up to four years of the individual's driving privileges. The law enforcement officer shall determine which of the tests is to be used."

N.D.C.C. § 39–20–01 (2011) (emphasis added). Section 39–20–04(1) (2011), N.D.C.C., provided that "[i]f a person refuses to submit to testing under section 39–20–01 ..., none may be given," but the person's license may be administratively revoked for up to four years.

[¶ 12] A person may not be tested against his will and retains the opportunity and choice to refuse a chemical test under N.D.C.C. § 39–20–04. *See Grosgebauer v. N.D. Dep't of Transp.,* 2008 ND 75, ¶¶ 8, 11, 747 N.W.2d 510. This "statutory right to refuse testing exists to avoid violent confrontations between drivers and police officers." *Id.* at ¶ 8. However, the statute ensures a driver may not refuse testing "to avoid the potential consequences of test submission and to avoid the penalties of refusal by remaining ambivalent." *Id.* at ¶ 11.

[¶ 13] We also explained that N.D.C.C. § 39–20–01 does not apply when a person voluntarily consents to chemical testing. *See City of Bismarck v. Hoffner,* 379 N.W.2d 797, 798–99 (N.D.1985) ("It appears axiomatic to this court that implied consent is unnecessary where actual consent is given. Nor is this court convinced ... that the procedural requirements contained in the implied-consent statute should also apply to situations where actual consent is given or sought."); *State v. Abrahamson,* 328 N.W.2d 213, 215 (N.D. 1982) (implied consent statute inapplicable when an individual voluntarily consents to giving blood sample and makes admissible consensual blood test results); *see also Fossum v. N.D. Dep't of Transp.,* 2014 ND

47, ¶¶ 11–12, 843 N.W.2d 282 ("As *Hoffner* and *Abrahamson* have recognized, the purpose of the implied-consent law is to have a procedure in place when someone says no.").

 [¶ 14] After a driver agrees to testing, the question becomes whether the driver "voluntarily" consented to chemical testing. *See Fossum,* at ¶ 13.

"The issue of voluntariness is generally decided by examining the totality of the circumstances which surround the giving of consent to see whether it is the product of an essentially free and unconstrained choice or the product of coercion. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Moreover, we have said we will show great deference on appeal to the trial court's determination of voluntariness by refusing to reverse its decision unless it is contrary to the manifest weight of the evidence. *State v. Discoe,* 334 N.W.2d 466 (N.D.1983)."

*Fossum,* at ¶ 13 (quoting *State v. Anderson,* 336 N.W.2d 634, 639 (N.D. 1983)). A person does not consent by merely acquiescing to a claim of legal authority. *See Bumper v. North Carolina,* 391 U.S. 543, 548–49, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *see also State v. Lange,* 255 N.W.2d 59, 64 (N.D.1977) (no suggestion that officer used "subtle methods of coercion or deception" to obtain the consent or that "the arresting officer asserted that he possessed a warrant when in fact he did not, which would serve to vitiate the consent").

[¶ 15] Here, McCoy agreed to take the chemical breath test after the deputy read him the implied consent advisory and, at that time, refusal to take the chemical test was not a crime. *Cf.* N.D.C.C. § 39–20–01(3) (2013). McCoy's argument is he was "coerced" into giving consent when the deputy read the implied consent advisory and that he was allowed the privilege to drive only in return for the surrender of his rights under U.S. Const. amend. IV and N.D. Const. art. I, § 8. McCoy contends he was not presented a "free and unconstrained choice" because he was threatened with loss of his driving privileges if he refused to consent to a warrantless search.

[¶ 16] McCoy relied on *Missouri v. McNeely,* —— U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), before the Department hearing officer and in the district court. McCoy did not cite *McNeely* in his main appellate brief and only responds to the Department's argument about *McNeely* in his reply brief. Nonetheless, we believe *McNeely* does not support McCoy's argument. In *McNeely,* the Supreme Court held only that the natural dissipation of alcohol in the bloodstream does not present "per se" exigent circumstances justifying an exception to the Fourth Amendment search warrant requirement for nonconsensual blood testing in *all* drunk-driving cases. *Id.* at 1567–68. The Court instead held that exigency in this context must be determined case by case based on the "totality of the circumstances." *Id.* at 1556. Unlike *McNeely,* the warrant requirement exception at issue here involves consent rather than exigent circumstances.

[¶ 17] Relying on *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and *Bumper,* 391 U.S. at 548–49, 88 S.Ct. 1788, McCoy asserts the Department must prove his performance of the test was not the product of submitting to the officer's legal authority and the court must examine the "totality of the circumstances" that led McCoy to take the test. McCoy argues that, under these circumstances, the Department could not prove McCoy "freely and voluntarily consented" to the warrantless search because

consent under the threat of losing driving privileges is not free and voluntary. The Department responds that since McCoy had the right to refuse the chemical test but chose to submit to the deputy's request, his decision was not "coerced" simply because the law ascribes the consequence of license revocation for refusing the test.

[¶ 18] For example, in *State v. Moore*, 354 Or. 493, 318 P.3d 1133, 1139–40 (2013), *adh'd to as modified*, 354 Or. 835, 322 P.3d 486 (2014), the Oregon Supreme Court held an implied consent advisory warning a defendant that evidence of refusal or failure to submit to blood alcohol testing may be offered against defendant did not constitute coercion to render the defendant's consent involuntary. The Oregon court explained that simply reciting the Oregon implied consent advisory was not coercive:

> "[I]t is difficult to see why the disclosure of accurate information about a particular penalty that may be imposed—if it is permissible for the state to impose that penalty—could be unconstitutionally coercive. Rather, advising a defendant of the lawful consequences that may flow from his or her decision to engage in a certain behavior ensures that that defendant makes an informed choice whether to engage in that behavior or not. Indeed, the *failure* to disclose accurate information regarding the potential legal consequences of certain behavior would seem to be a more logical basis for a defendant to assert that his or her decision to engage in that behavior was coerced and involuntary. Of course, accurately advising a defendant of a lawful penalty that could be imposed may well play a role in the defendant's decision to engage in the particular behavior, but

that does not mean that the defendant's decision was 'involuntary.' "

*Id.* at 1138.

[¶ 19] In *State v. Brooks*, 838 N.W.2d 563, 569 (Minn.2013), *cert. denied*, —— U.S. ——, 133 S.Ct. 1996, —— L.Ed.2d —— (2014), the Minnesota Supreme Court held the implied-consent advisory *by itself* does not coerce consent and the issue of consent must be evaluated based on the "totality of the circumstances." The court in *Brooks* held that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. In reaching this conclusion, the court considered coercion within the context of implied consent statutes:

> "In *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the Supreme Court held that a driver is not coerced into testifying against himself in violation of the Fifth Amendment when the State introduces his refusal to submit to chemical tests into evidence in a criminal trial for driving under the influence. The Court concluded that 'the State did not directly compel respondent to refuse the test, for it gave him the choice of submitting to the test or refusing.' *Id.* at 562, 103 S.Ct. at 922. While the 'choice to submit or refuse to take' the test may be a 'difficult' one, the Court held that the decision was 'not an act coerced by the officer.' *Id.* at 564, 103 S.Ct. at 923. We followed the analysis in *Neville* when we held that Minnesota's implied consent law, even though it makes it a crime to refuse testing, also does not coerce a driver into testifying against himself. *McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 855–56 (Minn. 1991)."

*Brooks*, at 570. The court in *Brooks* reasoned that, although *Neville* and *McDon-*

*nell* had examined coercion under the Fifth Amendment privilege against self-incrimination, both cases considered "whether the existence of a consequence for refusing to take a chemical test rendered a driver's choice involuntary," which was the same question presented in deciding whether Brooks's consent was coerced. *Brooks*, at 570. Based on *Neville* and *McDonnell*, the court held a driver's decision to take a test was not coerced "simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Brooks*, at 570.

[¶ 20] The court in *Brooks* distinguished the Supreme Court's decision in *Bumper*, 391 U.S. at 548–49, 88 S.Ct. 1788, holding *Bumper* did not support Brooks's argument that the State unlawfully coerced his consent. The *Brooks* court explained:

> "In *Bumper*, police sought to justify their search of a house based on the owner's consent, contending that she consented to the search by saying '[G]o ahead' after police told her they had a warrant. *Id.* at 546, 88 S.Ct. at 1790. The Court held that this sort of submission to authority did not constitute consent. *Id.* at 548, 88 S.Ct. at 1791–92. The Court concluded that when a police officer claims authority to search a house under a warrant, 'he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.' *Id.* at 550, 88 S.Ct. at 1792.

> "Unlike *Bumper*, the Minnesota Legislature has given those who drive on Minnesota roads a right to refuse the chemical test. *See* Minn.Stat. § .52, subd. 1. If a driver refuses the test, the police are required to honor that refusal and not perform the test. *Id.* Although

refusing the test comes with criminal penalties in Minnesota, the Supreme Court has made clear that while the choice to submit or refuse to take a chemical test 'will not be an easy or pleasant one for a suspect to make,' the criminal process 'often requires suspects and defendants to make difficult choices.' *Neville*, 459 U.S. at 564, 103 S.Ct. 916."

*Brooks*, 838 N.W.2d at 571 (footnotes omitted).

[¶ 21] Unlike Minnesota's implied consent law, the applicable North Dakota implied consent law did not impose criminal penalties for refusal of a chemical test. Nonetheless, our law presented McCoy with a difficult choice to which specified consequences attached. As this Court explained, "[R]efusing to submit to the test is a legislatively granted privilege," and the legislature "limited the privilege by attaching consequences to the act of exercising that privilege. *See* § 39–20–08 ('proof of refusal is admissible in any civil or criminal action'); § 39–20–04 (revocation of privilege to drive upon refusal to submit to testing)." *State v. Murphy*, 516 N.W.2d 285, 287 (N.D.1994) (citing *Neville*, 459 U.S. at 565, 103 S.Ct. 916). We agree with the rationale and conclusions in *Brooks* and *Moore* that a driver's decision to agree to take a test is not coerced simply because an administrative penalty has been attached to refusing the test. We reject McCoy's argument that his consent was coerced and not free and voluntary merely by the deputy's reading of the implied consent advisory, accurately informing McCoy that refusal would subject him to losing his driving privileges and presenting him with a choice.

[¶ 22] North Dakota's implied consent law, both at the time of McCoy's arrest and currently, states that "[a]ny individual who operates a motor vehicle on a highway

or on public or private areas to which the public has a right of access for vehicular use in this state *is deemed to have given consent, and shall consent,* . . . to a chemical test, or tests, of the blood, breath, or urine for the purpose of determining the alcohol concentration or presence of other drugs . . . in the individual's blood, breath, or urine." N.D.C.C. § 39–20–01(1) (emphasis added). We have held "[i]f the statutory requirements have been complied with, a person's consent to the chemical testing is implied and the person must affirmatively refuse to submit to the testing in order to withdraw the consent." *State v. Salter,* 2008 ND 230, ¶ 7, 758 N.W.2d 702 (citing *State v. Mertz,* 362 N.W.2d 410, 413–14 (N.D.1985)). Our legislature has provided a statutory right of refusal under N.D.C.C. § 39–20–04(1), but we have held that refusal under this statute operates as a withdrawal of the consent earlier given. *See Mertz,* 362 N.W.2d at 413–14.

[¶ 23] Under our statutory scheme, implied consent occurs at the time an individual operates a motor vehicle. If an individual is subsequently stopped and read the implied consent advisory, the driver has the choice at that point whether to withdraw or ratify the consent. In this case, however, the deputy also asked for and received actual consent from McCoy after reading the implied consent advisory. Thus, the proper analysis is whether the Department met its burden of establishing McCoy voluntarily consented to the chemical test based on the totality of the circumstances surrounding McCoy's actual consent. *See Fossum,* 2014 ND 47, ¶ 13, 843 N.W.2d 282; *Hoover,* 2008 ND 87, ¶ 15, 748 N.W.2d 730.

[¶ 24] As discussed, an individual's consent is not coerced simply because an administrative penalty has been attached to refusing the test or that law enforcement recites that law to the driver. Here, examining the totality of the circumstances at the time McCoy agreed to take the chemical breath test, nothing exists in the record to support a claim that McCoy's actual consent was involuntary, in that no evidence shows McCoy's consent was the product of coercion by the officer. The record does establish that the officer read McCoy the implied consent advisory and asked McCoy to take a chemical test and that McCoy, when presented with the choice of either ratifying or withdrawing his implied consent, agreed to take the test. Further, despite testifying at the hearing, McCoy presented no evidence to rebut the officer's testimony that he merely read the implied consent advisory to McCoy and asked him to take the test. We therefore conclude the Department established under the totality of the circumstances that McCoy freely and voluntarily consented to the breath test.

B

[¶ 25] McCoy argues North Dakota's implied consent law conditions the privilege of driving on a driver's surrender of the right to be free from unreasonable searches, presenting an "unconstitutional condition" under *Frost & Frost Trucking Co. v. Railroad Comm'n,* 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101 (1926).

[¶ 26] This Court has held driving is not a constitutional right but a privilege subject to reasonable control of the State under its police power. *See State v. Stuart,* 544 N.W.2d 158, 163 (N.D.1996); *N.D. Dep't of Transp. v. DuPaul,* 487 N.W.2d 593, 598 (N.D.1992); *State v. Mische,* 448 N.W.2d 412, 413 (N.D.1989); *State v. Larson,* 419 N.W.2d 897, 898 (N.D. 1988); *State v. Kouba,* 319 N.W.2d 161, 163 (N.D.1982). In response "to the carnage on our nation's highways," the States and the Congress have continued to in-

crease penalties and enact tougher laws. *See State v. Zimmerman*, 539 N.W.2d 49, 51 (N.D.1995); *see also Neville*, 459 U.S. at 558–59, 103 S.Ct. 916 ("The carnage caused by drunk drivers is well documented and needs no detailed recitation here."); *Kobilansky v. Liffrig*, 358 N.W.2d 781, 791 (N.D.1984) ("We may also take judicial notice of the carnage caused by the drunk driver."). The North Dakota Legislature enacted our Implied Consent Act in 1959 and has continued increasing prohibitions and penalties for driving under the influence and actual physical control. *Zimmerman*, at 51; *Timm v. State*, 110 N.W.2d 359, 360–61, 363 (N.D.1961); *see, e.g.*, 2013 N.D. Sess. Laws ch. 301.

[¶ 27] Although McCoy cites *Frost* without significant analysis or discussion, he nonetheless frames his issue only as a challenge to the voluntariness of his consent to the officer's search. This Court has repeatedly refused to consider challenges to the constitutionality of a statute that were not well established before this Court and the district court:

> "A party must do more than submit bare assertions to adequately raise constitutional issues. A party asserting a constitutional claim must [make a strong case supported by both fact and law] or forgo the claim. We have said a party waives an issue by not providing supporting argument and, without supportive reasoning or citations to relevant authorities, an argument is without merit. We have also said a party making a constitutional claim must provide persuasive authority and reasoning."

*Riemers v. O'Halloran*, 2004 ND 79, ¶ 6, 678 N.W.2d 547 (citations and internal quotation marks omitted). We further explained the rationale for requiring a party asserting a statute's unconstitutionality to provide more than mere bare assertions:

> "[A]n Act of the legislature is presumed to be correct and valid, and any doubt as to its constitutionality must, where possible, be resolved in favor of its validity. A statute enjoys a conclusive presumption of constitutionality unless it is clearly shown that it contravenes the state or federal constitution. The justice, wisdom, necessity, utility and expediency of legislation are questions for legislative, and not for judicial determination."

*Haney v. N.D. Workers Comp. Bur.*, 518 N.W.2d 195, 197 (N.D.1994) (citations and internal quotation marks omitted).

[¶ 28] Because the constitutionality of implied consent laws as an unconstitutional condition has not been briefed or argued by either party in any meaningful way, we do not address this issue.

### IV

[¶ 29] We conclude under the totality of circumstances that McCoy freely and voluntarily consented to the chemical breath test. We further conclude the hearing officer did not err in its conclusions of law because the Department established an exception to the warrant requirement. We considered the remaining issues and arguments and find them to be either unnecessary to our decision or without merit. The judgment is affirmed.

[¶ 30] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.