**CITY OF BISMARCK, Plaintiff and Appellee,**

v.

**James HOFFNER, Defendant and Appellant.**

**Cr. No. 1107.**

Supreme Court of North Dakota.

Dec. 18, 1985.

Paul H. Fraase, Asst. City Atty., Bismarck, for plaintiff and appellee.

Ralph A. Vinje of Vinje Law Firm, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

James Hoffner appealed from his conviction of driving with a blood-alcohol concentration of at least 0.10. We affirm.

On March 22, 1984, Hoffner was involved in a two-car accident. As a result of injuries received in the accident, he was taken to a hospital. While in the emergency room, an officer investigating the accident approached Hoffner. The officer told him that "he would probably—or, that he would be placed under arrest" and informed him that if he refused the blood test "he would probably lose his driver's license for a

year." Hoffner consented to the blood test. Following his release from the hospital that night, Hoffner was advised of his rights and placed under arrest.[1] Hoffner moved to suppress the results of the blood test, testifying that it was the threat of losing his license for a year that caused him to allow the blood to be taken. The lower court, relying on *State v. Abrahamson*, 328 N.W.2d 213 (N.D.1982), denied the motion to suppress, and Hoffner was convicted of the charge.

Hoffner argues (1) that the court should overrule *Abrahamson*, wherein we held that Chapter 39–20, N.D.C.C., does not apply when a person voluntarily submits to the extraction of a blood specimen; (2) that *Abrahamson* is not controlling because of Section 39–20–11, N.D.C.C., which applies the provisions of Chapter 39–20 to municipal ordinances that prohibit the driving or controlling of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof; and (3) that the City of Bismarck did not demonstrate that Hoffner freely, knowingly, and voluntarily consented to waive his Fourth Amendment right against unreasonable search and seizure.

I

In *Abrahamson* we held that the implied-consent statute is inapplicable where an individual voluntarily consents to the taking of a blood specimen and thus makes admissible the results of the consentual blood test. Hoffner contends that *Abrahamson* was incorrectly decided because Chapter 39–20 requires that the test, to which there is an implied consent,

"must be administered at the direction of a law enforcement officer *only after placing the person*, except persons mentioned in section 39–20–03 [i.e., any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal], *under arrest* and informing that person that the person is or will be charged with the offense of driving or

---

1. We were informed at oral argument that Hoffner was placed under arrest before the test results from the blood specimen were available to the police.

being in actual control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof." Section 39–20–01, N.D.C.C. [Emphasis added.]

In support of his argument that *Abrahamson* should be overruled, Hoffner claims that this court failed to analyze its reasons for deciding in *Wanna v. Miller*, 136 N.W.2d 563 (N.D.1965), that Chapter 39–20 does not apply where a person voluntarily submits to the extraction of the blood specimen, and that the *Abrahamson* court accepted the conclusion reached in *Wanna* without detailing the reasons for its conclusion.[2] It appears axiomatic to this court that implied consent is unnecessary where actual consent is given. Nor is this court convinced in light of the traditional function of consent that the procedural requirements contained in the implied-consent statute should also apply to situations where actual consent is given or sought.

The concept of consent, or more accurately the relinquishment of one's rights, is long-standing and pervasive within our system of jurisprudence. It has been a part of our legal heritage from the time in which society recognized the existence of free will and individual rights. Two distinct manners of consent have been employed over the years to determine the validity of the alleged consent: voluntary consent, and the more stringent standard, a knowing and intelligent waiver. The voluntary-consent standard is applied in most situations, primarily as a practical consequence of the need for efficient and orderly administration of our system of justice. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Nonetheless, there are other situations where the right to be

relinquished approaches fundamental status, thereby requiring a knowing and intelligent waiver of that right. Such rights usually involve constitutional protections that preserve fairness during the trial process within the context of our adversarial system. *Schneckloth, supra.*

In the instant case, Hoffner attempts to place Chapter 39–20 beyond even the constitutional rights that may be relinquished by a knowing and intelligent waiver, and insists that the statute prohibits the taking of blood prior to arrest even where consent is given. But we cannot accept the proposition that the Legislature, by its language in Chapter 39–20, intended to forego this well-founded concept. Had it been the Legislature's intent to place this special limit on an individual's historic ability to consent to the relinquishment of a right, it would have so provided in the enactment.[3] In addition, had our previous interpretation of Chapter 39–20 in *Abrahamson* been incorrect, we presume the Legislature would have corrected our error. Since it has made no change in the Act concerning the ability of an individual to consent to the taking of a blood test, we may assume that our interpretation of Chapter 39–20 in *Abrahamson* is correct and should not be overruled.

II

Hoffner next argues that *Abrahamson* is not controlling because that case involved a prosecution in county court and Section 39–20–11, N.D.C.C., specifically applies the provisions of Chapter 39–20 to municipal ordinances. This argument is basically a continuation of the argument that the specific language of Chapter 39–20

2. Unfortunately, the City of Bismarck did not address the issue of whether *Abrahamson* should be overruled, despite its repeated reliance on *Abrahamson* and its admission that "[t]he fact situation is nearly identical to that of *Abrahamson.*"

3. An example of such specific legislative expression is found in Section 39–29–04, N.D.C.C. Although a blood test may be required without the consent of the person arrested as a search incident to arrest [*Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)], our

Legislature in enacting Section 39–20–04 specified that if "a person refuses to submit to testing under Section 39–20–01 or 39–20–14, none shall be given, ..." We have construed this language to require an affirmative refusal of the taking of the test. *State v. Mertz*, 362 N.W.2d 410 (N.D. 1985); *State v. Kimball*, 361 N.W.2d 601 (N.D. 1985). Had the Legislature intended to restrict the right of the individual to voluntarily consent to the taking of a blood specimen we would expect equally specific language to have been used.

prohibits the consensual taking of a blood test prior to arrest. The only difference is that Hoffner attempts to distinguish *Abrahamson* by arguing that the provisions of the statute apply more stringently to municipal prosecutions than to county prosecutions. For the reasons discussed in Part I, we believe that the language of Chapter 39–20 does not prohibit use of consensual blood tests, even in the prosecution for the violation of municipal ordinances prohibiting the driving or controlling of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof.

## III

■■ Hoffner's final argument is that the City of Bismarck did not demonstrate that Hoffner freely, knowingly, and voluntarily consented to waive his Fourth Amendment right against unreasonable search and seizure.[4] We determined by dicta in *Wanna*, and reasserted in *Abrahamson*, that the standard for determining the validity of consent to the extraction of a blood specimen is whether the consent was given voluntarily. The reason for requiring consent and the standards employed in evaluating the validity of the consent were set forth in *Abrahamson:*

"Because the taking of a blood sample is a search, the police officer needs to be justified in his request by obtaining a search warrant or meeting an exception to the search-warrant requirement. See *State v. Matthews*, 216 N.W.2d 90 (N.D. 1974). One of the exceptions to the warrant requirement is that the person consent to the search. *State v. Swenningson*, 297 N.W.2d 405 (N.D.1980).

"The Fourth Amendment requires that consent to a search be voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Page*, 277 N.W.2d 112 (N.D. 1979). To determine what constitutes 'voluntary consent' we consider the total-

ity of the circumstances. *State v. Metzner*, 244 N.W.2d 215 (N.D.1976). In the instant case the police officer's statement may have led Abrahamson to mistakenly believe he would lose his driver's license if he refused to consent to the blood-alcohol test. Although the officer probably did not intentionally try to deceive Abrahamson, the result may have been the same. This misleading statement by the officer is one factor to be considered in determining the voluntariness of Abrahamson's consent." *Abrahamson*, 328 N.W.2d at 216.

In the instant case, the lower court stated that "[i]t appears that Mr. Hoffner agreed to take the test just like Mr. Abrahamson did after being advised that he would lose his license if he didn't take it." The defendant in *Abrahamson:*

"was fully conscious when he agreed to the taking of the blood sample. Although he was misinformed regarding the possible loss of his driver's license, Abrahamson did not testify that he would have refused the test but for the officer's statement. After considering the totality of the circumstances, we believe that the misleading statement made by the police officer alone is insufficient to vitiate Abrahamson's consent to the blood-alcohol test." *Abrahamson*, 328 N.W.2d at 217.

It is apparent that the lower court in this case perceived a distinction between Hoffner's testimony as to the *reason* he took the test and testimony (which was not given) that he never would have taken it *but for* the officer's statement. The court held that "[b]ecause I can't distinguish this case from *Abrahamson*, I am denying the motion to suppress." Implicit in this holding is the factual finding that despite Hoffner's testimony that it was the threat of losing his license for a year that caused him to submit to the blood test, Hoffner consented to the taking of the blood voluntarily. We

---

**4.** Hoffner's attempt to object to the blood test under the North Dakota Constitution by merely mentioning the State Constitution in the listing of the issues, without any further mention of the State Constitution in the brief, is insufficient to raise the issue on appeal. Indeed, Hoffner fails to even cite the provision of the North Dakota Constitution on which he attempts to rely.

necessarily give great weight to the lower court's decision because of its opportunity to ascertain the credibility of the witnesses. See, e.g., *State v. Frank*, 350 N.W.2d 596 (N.D.1984). Furthermore, as we indicated in *Abrahamson*, quoted above, a misleading statement by the officer is only one factor to be considered in determining the voluntariness of the consent.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and MESCHKE and GIERKE, JJ., concur.

LEVINE, Justice (specially concurring).

As the scenario developed defendant was in fact arrested without reference to the blood test results and therefore would have lost his driver's license had he refused to take the blood test. There were therefore no misleading statements by the police officer. Had the police been apprised of the blood test results prior to making the arrest, I would agree with the defendant's position that his consent was involuntary. In my view, under the "totality of circumstances," a consent obtained by ruse or deception, would not be voluntary if the defendant establishes he would not have consented but for his having been misled.

Because I find no such misleading statements in this case, I concur.