2005 ND 95

**Kevin Mark KOENIG, Petitioner and Appellee,**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

No. 20040351.

Supreme Court of North Dakota.

May 17, 2005.

Douglas B. Anderson (argued), Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for respondent and appellant.

Thomas A. Dickson, of Dickson & Purdon Law Office, Bismarck, N.D., and Chad R. McCabe (argued), of Vinje Law Firm, Bismarck, N.D., for petitioner and appellee.

MARING, Justice.

[¶ 1] The North Dakota Department of Transportation ("Department") appeals from a district court judgment reversing its administrative suspension of Kevin Koenig's driving privileges for ninety-one days. We reverse the district court's judgment and reinstate the Department's decision.

I

[¶ 2] At approximately 12:30 a.m. on March 14, 2004, North Dakota Highway Patrol Officer Eric Pederson observed Koenig operating a vehicle without its headlights on. After initiating a traffic stop of the vehicle, Officer Pederson suspected Koenig was driving under the influence of alcohol and administered several field sobriety tests. After failing the tests, Koenig was placed under arrest and transported to the Stutsman County Corrections Center where he submitted to Intoxilyzer testing.

[¶ 3] After providing the first of two breath samples necessary to produce a final test result using the Intoxilyzer machine, Koenig put chewing tobacco in his mouth, making it impossible to obtain an accurate reading on the second required breath sample. Officer Pederson testified he did not think Koenig used the chewing tobacco to intentionally interfere with the test results. Officer Pederson then had Koenig remove the tobacco from his mouth. Officer Pederson began a twenty-minute waiting period, which is necessary under the approved method for this particular model Intoxilyzer, if the test subject has had anything "to eat, drink, or smoke." Officer Pederson testified, "[w]e didn't do a second subject test because the test wasn't validated do [sic] to the fact he put chewing tobacco in. Then which actually turned out to be kind of fortunate because when I got done it wouldn't print out.

Somebody had messed with the printer. So got the printer working again." Consequently, a record of the results of this first incomplete Intoxilyzer test was not printed; therefore, documentation relating to the results of this test was not forwarded to the Department.

[¶ 4] After ascertaining the twenty-minute waiting period, a second Intoxilyzer test, composed of the required two breath samples, was administered and successfully printed. This test established Koenig's blood-alcohol concentration at .16 percent of body weight. Officer Pederson made notations regarding the problems with the first test on both the printout of the second test results and on the test record checklist associated with the second test. He then forwarded the documentation to the Department. When asked how he fixed the printer between the administration of the first and second Intoxilyzer tests, Officer Pederson testified he "just pulled a print cartridge out, pulled all of the paper out, put everything back in, and put it in and it was the green light quit flashing and it came on.... It was nothing internal to the Intoxilyzer." Officer Pederson further testified, "I could not get the test record to print out because it timed itself out." Based on this evidence, the Department suspended Koenig's driver's license.

[¶ 5] Koenig appealed the Department's decision to the district court, arguing that because the officer failed to forward a record of the first Intoxilyzer test results to the Department, the Department did not have jurisdiction under N.D.C.C. § 39–20–03.1(3), which requires the law enforcement officer to forward to the director test records for "all tests" administered. The district court agreed with Koenig and reversed the Department's suspension of his license.

[¶ 6] The Department appeals the judgment, arguing the district court erred in requiring the officer to forward results of the first incomplete Intoxilyzer test because the results were invalid due to Koenig's use of chewing tobacco and were not printed due to a printer malfunction.

## II

[¶ 7] Judicial review of a decision to suspend a driver's license is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Larsen v. North Dakota Dep't of Transp.*, 2005 ND 51, ¶ 4, 693 N.W.2d 39. Under N.D.C.C. § 28–32–46, the district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 8] On an appeal from a district court's ruling on an administrative appeal, our Court reviews the agency's order in the same manner. N.D.C.C. § 28–32–49; *Larsen*, 2005 ND 51, ¶ 4, 693 N.W.2d 39.

[2, 3] [¶ 9] The interpretation of a statute is a question of law, which is fully reviewable on appeal. *Johnson v. North Dakota Dep't of Transp.*, 2004 ND 148, ¶ 5, 683 N.W.2d 886. When an appeal involves the interpretation of a statute, our Court will affirm the agency's order unless it finds the order is not in accordance with the law. *Id.*

## III

[¶ 10] The sole issue presented on appeal is whether the Department lacked the jurisdiction necessary to suspend Koenig's driver's license because the arresting officer did not forward "all tests" administered as required under N.D.C.C. § 39–20–03.1(3). Section 39–20–03.1(3), N.D.C.C., provides:

> In addition to the operator's license and report, the law enforcement officer shall forward to the director a certified copy of the operational checklist and test records of a breath test and a copy of the certified copy of the analytical report for blood, saliva, or urine test for all tests administered at the direction of the officer.

[¶ 11] In *Bosch v. Moore*, 517 N.W.2d 412, 413 (N.D.1994), our Court stated, in pertinent part:

> Section 39–20–03.1(3) requires the officer to forward the test records for "all tests" conducted at the officer's direction, regardless of whether the officer judges the results to be invalid. We have said that an administrative agency must follow the basic mandatory provisions of the statute. The statute's command that all tests be forwarded to DOT is basic and mandatory. It precludes

the officer's exercise of choice and requires the transmittal of "all tests." The legislature has made it the hearing officer's domain, not the officer's, to judge the foundational facts for the admissibility of test results and the weight to be given to each of those results. Therefore, we conclude that the officer's failure to submit the Intoxilyzer test records deprived DOT of authority to suspend Bosch's driving privileges.

*Bosch,* 517 N.W.2d at 413 (citation omitted); *see also Larson v. Moore,* 1997 ND 227, 571 N.W.2d 151.

[¶ 12] Both *Bosch* and *Larson* are distinguishable from this case. In *Bosch,* the officer conducted both a urine test and an Intoxilyzer breath test. *Bosch,* 517 N.W.2d at 413. The officer then discarded the Intoxilyzer test because the deviation between the two breath samples was such that the arresting officer felt the results were invalidated. *Id.* at 412. Only the results of the urine test were forwarded to the Department. *Id.* We held the statute precludes an officer from using the officer's discretion to determine which test to forward. *Id.* at 413. Consequently, the Department lacked jurisdiction because the officer involved substituted his judgment for that of the Department by discarding a test he deemed invalid. *Id.*

[¶ 13] In *Larson,* the defendant was given two blood tests. *Larson,* 1997 ND 227, ¶ 3, 571 N.W.2d 151. During the first blood test, the nurse was only able to draw a small amount of blood. *Id.* A second sample was then obtained containing a sufficient amount of blood and was forwarded according to standard procedure. *Id.* The arresting officer discarded the first sample. *Id.* We reversed the hearing officer's decision, holding "the officer had no discretion in determining whether an analytical report may be made from a small amount of blood." *Id.* at ¶ 10.

[¶ 14] Here, Officer Pederson did not discard any test results or otherwise make a judgment on the validity of any tests administered to Koenig. Every available record of test results was forwarded to the Department. The machine used in this circumstance, the Intoxilyzer 5000 KB–EP, requires the test subject to have had nothing to eat, drink, or smoke within twenty minutes before the collection of a breath sample. Presumably, this requirement includes using chewing tobacco. Officer Pederson testified that after administering the first breath sample, Koenig "put in a wad of chewing tobacco," causing Officer Pederson to wait before administering the second breath sample because the tobacco use would invalidate the test result. The approved method for the Intoxilyzer also indicates a foreign substance in the subject's mouth will invalidate the results. Officer Pederson testified he had Koenig remove the tobacco to initiate the required twenty-minute wait before beginning a new test. He then attempted to print a record of the first test, but experienced a printer malfunction. By the time the printer was working again, the Intoxilyzer had "timed out" and would no longer provide the test results of the first breath sample. After the twenty-minute wait, a second Intoxilyzer test was administered and the officer forwarded to the Department a record of those results, which indicated Koenig's blood-alcohol concentration was .16.

[¶ 15] In *Schwind v. Director, North Dakota Dept. of Transp.,* 462 N.W.2d 147, 150 (N.D.1990), we addressed the jurisdictional requirements of the Department:

While the jurisdiction of an administrative agency is dependent upon the terms of a statute, these terms must be construed logically so as not to produce an absurd result. *Fireman's Fund Mortgage Corp. v. Smith,* 436 N.W.2d

246 (N.D.1989). Where adherence to the letter of the law would result in an absurdity, we have noted that "effect will be given the real intention even though contrary to the letter of the law." *Perry v. Erling*, 132 N.W.2d 889, 896 (N.D.1965) (quoting 82 C.J.S. Statutes § 325 (1953)).

The clear legislative intent in enacting chapter 39–20, N.D.C.C., was for the protection of the public, i.e., to prevent individuals from driving while under the influence of intoxicants. *Williams v. North Dakota State Highway Comm'r*, 417 N.W.2d 359, 360 (N.D.1987); *Asbridge v. North Dakota State Highway Comm'r*, 291 N.W.2d 739, 750 (N.D. 1980). Section 39–20–03.1, N.D.C.C., was enacted, in part, to help ensure that an individual who violated this chapter would not continue to drive. It would be an absurd result if we were to hold that an officer's failure to strictly comply with this portion of the statute had the opposite effect. While it is clear that section 39–20–03.1, N.D.C.C., requires the officer to forward the operator's license, the failure to do so does not destroy the Director's jurisdiction to suspend a violator's driving privileges. A contrary holding would defeat the Legislature's intent to protect the public from potential hazards posed by intoxicated drivers.

[¶ 16] On appeal, Koenig does not dispute any of the material facts supporting the Department's suspension of his license. To conclude the Department lacked jurisdiction because the officer failed to forward test results that were not printed due to a printer malfunction and that had nothing to do with the officer's exercise of judgment concerning the validity of the results, would produce an absurd result contrary to the intent and public policy behind N.D.C.C. § 39–20–03.1(3).

### IV

[¶ 17] We reverse the district court's judgment and reinstate the Department's suspension of Koenig's driver's license.

[¶ 18] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.