2014 ND 47

**Scott FOSSUM, Appellee**

**v.**

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellant.**

**No. 20130310.**

Supreme Court of North Dakota.

March 11, 2014.

Justin J. Vinje, Bismarck, N.D., for appellee.

Michael T. Pitcher, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for appellant.

SANDSTROM, Justice.

[¶ 1] The Department of Transportation appeals from a district court judgment reversing the decision of a hearing officer to suspend the driving privileges of Scott Fossum. As this Court held in *City of Bismarck v. Hoffner*, 379 N.W.2d 797 (N.D.1985), and *State v. Abrahamson*, 328 N.W.2d 213 (N.D.1982), the implied-consent requirements of N.D.C.C. § 39–20–01 do not apply when an individual voluntarily consents to a chemical test. We therefore reverse the judgment and reinstate the hearing officer's decision to suspend Fossum's driving privileges.

I

[¶ 2] On January 12, 2013, Bismarck Police Officer Colt Bohn issued a report and notice form to Fossum. On the form, Officer Bohn stated he stopped Fossum's vehicle for speeding but ended up arresting Fossum because an odor of alcoholic beverages emanated from the vehicle and Fossum failed field sobriety and screening tests. Officer Bohn certified he issued Fossum a temporary operator's permit at that time. Fossum was twenty years old at the time of arrest, and he requested an administrative hearing before a hearing officer of the Department.

[¶ 3] At the hearing, Officer Bohn testified that after stopping Fossum and noting the odor of alcohol emanating from within the vehicle, he asked Fossum whether he had had anything to drink. He testified Fossum initially said no, but when asked a second time, Fossum indicated he had been drinking. Officer Bohn testified he asked Fossum to get out of the vehicle and walk back to his patrol car. He testified that once back at his patrol car, he performed a Horizontal Gaze Nystagmus ("HGN") test upon Fossum. Officer Bohn testified that after receiving four of six clues from the HGN test and deeming the test to be a fail, he read Fossum the "North Dakota Implied Consent" advisory and asked whether he would be willing to submit to a field breath test called an S–D5, to which Fossum agreed. Officer Bohn testified he received a "breath alcohol content" of .079 and placed Fossum under arrest for DUI, minor zero tolerance. Officer Bohn testified that he used the words "minor zero tolerance" when he arrested Fossum and that minor zero tolerance is a DUI arrest of a person under the age of 21 with a blood alcohol content under .08. Officer Bohn testified Fossum "was read the North Dakota Implied Consent a second time," and he asked Fossum if he would be willing to take an Intoxilyzer test at the police station. He testified Fossum consented to taking the Intoxilyzer test. Officer Bohn testified the Intoxilyzer testing was completed within two hours of the time he saw Fossum driving and "[a]t 0224 hours, a breath result of .085 percent" was found.

[¶ 4] The hearing officer found:

Officer Bohn requested field tests; as the night was cold, he did not request outdoor tests such as the walk and turn test or the one leg stand test. Results were unsatisfactory or failing on the horizontal gaze nystagmus test. Results were .079 on the S–D5 on-site screening

test, but the evidence presented was unclear with regard to whether the S–D5 test was done before or after Mr. Fossum was formally detained under the zero tolerance law; the S–D5 results will therefore not be considered here. Officer Bohn detained Mr. Fossum for DUI under the zero tolerance law, but the evidence presented did not establish that Officer Bohn also arrested Mr. Fossum for a violation of NDCC 39–08–01 or equivalent ordinance. Scott Fossum consented to breath testing to determine his alcohol concentration. Intoxilyzer testing was done in accordance with the state toxicologist's approved method, with results showing an alcohol concentration of .08% within two hours of the time Mr. Fossum was driving.

[¶ 5] The hearing officer relied on the result of the Intoxilyzer test and suspended Fossum's license for 91 days. Fossum petitioned for reconsideration, but the hearing officer denied the petition. Fossum appealed the decision to the district court, alleging violation of basic and mandatory requirements of N.D.C.C. § 39–08–01.

[¶ 6] On appeal, the district court reversed, concluding the results of the Intoxilyzer test should not have been considered. The district court stated, "Even though [the hearing officer] found that 'the evidence presented did not establish that Officer Bohn also arrested Mr. Fossum for a violation of NDCC 39–08–01 [DUI statute] or equivalent ordinance,' she considered the results of the Intoxilyzer test, which showed Fossum's blood alcohol concentration exceeded the .02% for a person under twenty-one . . . ." The district court held the hearing officer's findings of fact and conclusions of law contradicted the evidence presented to her and contradicted N.D.C.C. § 39–20–01, which provided at the time of Fossum's arrest: "The test . . .

must be administered at the direction of a law enforcement officer only after placing the person . . . under arrest and informing that person that the person is or will be charged with the offense of driving . . . while under the influence of intoxicating liquor. . . ." The court concluded that the results of Fossum's Intoxilyzer test should not have been considered and that without this evidence, the hearing officer would have been unable to find Fossum's blood concentration exceeded .02 percent. The court entered judgment reversing the hearing officer and reinstating Fossum's driving privileges.

[¶ 7] Fossum properly requested an administrative hearing under N.D.C.C. § 39–20–05. The hearing officer had jurisdiction under N.D.C.C. § 39–20–05. Fossum's notice of appeal from the Department's decision to the district court was timely under N.D.C.C. § 28–32–42(1). *See DuPaul v. N.D. Department of Transportation,* 2003 ND 201, ¶ 6, 672 N.W.2d 680 (motorist may challenge administrative ruling under either N.D.C.C. § 39–20–06 or under N.D.C.C. § 28–32–42(1) if a petition for reconsideration has been filed under N.D.C.C. § 28–32–40(1) and been denied). The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 28–32–42. Fossum filed a timely notice of appeal from the district court judgment under N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

II

[¶ 8] The Department argues the hearing officer's decision to suspend Fossum's driving privileges should be reinstated because he submitted to the chemical test.

[¶ 9] Our deferential standard of review for administrative proceedings is well-established:

Under N.D.C.C. § 28–32–49, we review an appeal from a district court judgment in an administrative appeal in the same manner as allowed under N.D.C.C. § 28–32–46, which requires a district court to affirm an order of an administrative agency unless it finds:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

*Schock v. N.D. Department of Transportation*, 2012 ND 77, ¶ 11, 815 N.W.2d 255. "[W]e do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979).

[¶ 10] The district court reversed the hearing officer, concluding her findings of fact and conclusions of law contradicted the evidence presented to her and contradicted the statutory language of N.D.C.C. § 39–20–01. Section 39–20–01, N.D.C.C., at the time of Fossum's encounter with Officer Bohn, provided:

Any person who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcohol, other drug, or combination thereof, content of the blood. . . . The test or tests must be administered at the direction of a law enforcement officer only after placing the person . . . under arrest and informing that person that the person is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof. For the purposes of this chapter, the taking into custody of . . . a person under twenty-one years of age satisfies the requirement of an arrest.

[¶ 11] In *City of Bismarck v. Hoffner*, 379 N.W.2d 797, 798–99 (N.D.1985), this Court interpreted N.D.C.C. § 39–20–01 as not applying in cases where an individual voluntarily consents to chemical testing:

In *Abrahamson* we held that the implied-consent statute is inapplicable where an individual voluntarily consents to the taking of a blood specimen and thus makes admissible the results of the consentual [sic] blood test. Hoffner contends that *Abrahamson* was incorrectly decided because Chapter 39–20 requires

that the test, to which there is an implied consent,

"must be administered at the direction of a law enforcement officer *only after placing the person,* except persons mentioned in section 39–20–03 [i.e., any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal], *under arrest* and informing that person that the person is or will be charged with the offense of driving or being in actual control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof." Section 39–20–01, N.D.C.C. [Emphasis added.]

... *It appears axiomatic to this court that implied consent is unnecessary where actual consent is given. Nor is this court convinced in light of the traditional function of consent that the procedural requirements contained in the implied-consent statute should also apply to situations where actual consent is given or sought.*

(Emphasis added.)

■ [¶ 12] As *Hoffner* and *Abrahamson* have recognized, the purpose of the implied-consent law is to have a procedure in place when someone says no; N.D.C.C. § 39–20–01 does not apply when the driver consents to testing.

[¶ 13] The question then becomes whether Fossum voluntarily consented to chemical testing. With regard to voluntary consent to take a chemical test, this Court has stated:

The State's next argument is that regardless of whether or not there was an arrest, Anderson voluntarily consented to give the fluid samples. This argument conforms to our statement in *Wanna v. Miller,* 136 N.W.2d 563, 569 (N.D. 1965), that Section 39–20–01 does not require that a person be placed under

arrest before a chemical test may be administered when the person voluntarily consents to a chemical test.

The issue of voluntariness is generally decided by examining the totality of the circumstances which surround the giving of consent to see whether it is the product of an essentially free and unconstrained choice or the product of coercion. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Moreover, we have said we will show great deference on appeal to the trial court's determination of voluntariness by refusing to reverse its decision unless it is contrary to the manifest weight of the evidence. *State v. Discoe,* 334 N.W.2d 466 (N.D.1983).

*State v. Anderson,* 336 N.W.2d 634, 639 (N.D.1983).

■ [¶ 14] In this case, the hearing officer found the "[r]esults were .079 on the S–D5 on-site screening test, but the evidence presented was unclear with regard to whether the S–D5 test was done before or after Mr. Fossum was formally detained under the zero tolerance law; the S–D5 results will therefore not be considered here." Although we have concluded N.D.C.C. § 39–20–01 does not apply when voluntary consent is given, the hearing officer said the time of Fossum's arrest was a potential issue for admission of the S–D5 field test in the administrative hearing and declined to consider it.

[¶ 15] Section 39–20–14, N.D.C.C., explains the application of North Dakota's implied-consent law prior to arrest and application of N.D.C.C. § 39–20–01:

1. Any individual who operates a motor vehicle upon the public highways of this state is deemed to have given consent to submit to an onsite screening test or tests of the individual's breath for the purpose of esti-

mating the alcohol concentration in the individual's breath upon the request of a law enforcement officer who has reason to believe that the individual committed a moving traffic violation or was involved in a traffic accident as a driver, and in conjunction with the violation or the accident the officer has, through the officer's observations, formulated an opinion that the individual's body contains alcohol.

. . . .

3. ... The results of such screening test must be used only for determining whether or not a further test shall be given under the provisions of section 39–20–01. The officer shall inform the individual that North Dakota law requires the individual to take the screening test to determine whether the individual is under the influence of alcohol, that refusal to take the screening test is a crime, and that refusal of the individual to submit to a screening test may result in a revocation ... of that individual's driving privileges. If such individual refuses to submit to such screening test or tests, none may be given, but such refusal is sufficient cause to revoke such individual's license or permit to drive in the same manner as provided in section 39–20–04, and a hearing as provided in section 39–20–05 and a judicial review as provided in section 39–20–06 must be available.

4. The director must not revoke an individual's driving privileges for refusing to submit to a screening test requested under this section if the individual provides a sufficient breath, blood, or urine sample for a chemical test requested under section 39–20–01 for the same incident.

[¶ 16] This Court has explained the role of the N.D.C.C. § 39–20–14 on-site screening test:

> Similar in purpose to the various field sobriety tests, *the purpose of an on-site chemical screening test is to insure that sufficient probable cause exists to warrant an arrest.* The arresting officer, in light of the information already available to him, bent over backwards to insure that he had sufficient probable cause to place Asbridge under arrest, and we fail to see how Asbridge was prejudiced by the administration of the test. Had he passed the screening test, he would have been spared the onerous burden and inconvenience of having to decide whether or not to submit to further chemical testing.

*Asbridge v. N.D. State Highway Commissioner*, 291 N.W.2d 739, 745 (N.D.1980) (emphasis added).

[¶ 17] Officer Bohn stated that he stopped Fossum's vehicle for speeding but that he ended up arresting Fossum because an odor of alcoholic beverages emanated from the vehicle. Officer Bohn testified that after receiving four of six clues from the HGN test and deeming the test to be a fail, he read Fossum the implied-consent advisory and asked whether he would be willing to submit to an S–D5 field breath test, to which Fossum agreed. Officer Bohn testified the result of the S–D5 was an alcohol concentration of .079.

[¶ 18] The results of the S–D5 administered under N.D.C.C. § 39–20–14 are admissible only "for determining whether or not a further test shall be given under the provisions of section 39–20–01." N.D.C.C. § 39–20–14(3). In this case, Fossum submitted to the S–D5 field test, and an Intoxilyzer test was subsequently administered.

[¶ 19] An officer who has witnessed a moving violation and smells alcohol on the driver's breath may require the driver to

submit to an on-site screening test of the driver's breath. The result of that test may be used to determine whether a further test—a test requiring probable cause to arrest—shall be given under N.D.C.C. § 39–20–01. Thus, as we held in *Asbridge,* the on-site screening test results are relevant and admissible to establish probable cause to arrest. On-site screening tests are not admissible to establish blood alcohol content for purposes beyond probable cause to arrest and require further testing.

[¶ 20] Officer Bohn testified that after placing Fossum under arrest, reading the implied-consent advisory a second time, and asking Fossum whether he would be willing to take an Intoxilyzer test at the police station, Fossum consented to taking the Intoxilyzer test. The hearing officer found, "Scott Fossum consented to breath testing to determine his alcohol concentration. Intoxilyzer testing was done in accordance with the state toxicologist's approved method, with results showing an alcohol concentration of .08% within two hours of the time Mr. Fossum was driving."

[¶ 21] Under the facts of this case, the timing of the S–D5 test was irrelevant. The evidence provided by the Intoxilyzer test was sufficient for the hearing officer to have found Fossum was driving with an alcohol concentration of ".08% within two hours of the time Mr. Fossum was driving."

### III

[¶ 22] The conclusions of law and order of the hearing officer are supported by the findings of fact, and the order is in accordance with the law. We reverse the judgment of the district court and reinstate the hearing officer's decision suspending Fossum's driving privileges.

[¶ 23] DANIEL J. CROTHERS, J., concurs.

KAPSNER, Justice, concurring in the result.

[¶ 24] I concur in the result reached by the majority opinion. The issues raised at the administrative hearing were:

Issues to be considered at today's suspension hearing on alcohol concentration test results are as follows: 1) whether a law enforcement officer had reasonable grounds to believe, with respect to a person under twenty-one years of age, the person had been driving or was in actual physical control of a vehicle while having an alco ... alcohol concentration of at least two one-hundredths of one percent by weight; 2) whether the person was tested in accordance with North Dakota Century Code Section 39–20–01 or 39–20–03 and, if applicable, Section 39–20–02; and 3) whether the test results show the person had an alcohol concentration of at least two one-hundredths of one percent by weight.

[¶ 25] The specification of error raised by Fossum at the district court was:

The Department erroneously determined that the arresting officer complied with basic and mandatory provisions of N.D.C.C. § 39–08–01 before requesting a chemical test for intoxication. Specifically, law enforcement failed to advise Mr. Fossum that he was being placed under arrest for driving under the influence prior to requesting a chemical test for intoxication.

[¶ 26] The district court's decision was that there was a failure of strict statutory compliance resulting in an evidentiary failure:

Even though ALJ Varvel found that "the evidence presented did not establish that Officer Bohn also arrested Mr. Fossum for a violation of NDCC 39–08–

01 or equivalent ordinance," she considered the results of the Intoxilyzer test, which showed Fossum's blood alcohol concentration exceeded the .02% for a person under twenty-one years of age. *See* Tr. at 30. However, North Dakota Century Code section 39–20–01 states that "[t]he test or tests must be administered at the direction of a law enforcement officer only after placing the person ... under arrest and *informing* that person that the person is or will be charged with the offense of driving or being in actual physical control of a vehicle...." N.D.C.C. § 39–20–01. ALJ Varvel's Findings of Fact and Conclusions of law directly contradict the evidence presented to her and the wording of North Dakota Century Code section 39–20–01. The evidence demonstrates that the results of Fossum's Intoxilyzer results should not have been considered and without this evidence ALJ Varvel would have been unable to determine Fossum's blood alcohol content exceeded .02%. *See* N.D.C.C. 39–20–05(2).

[¶ 27] The issue raised on appeal by the Department was:

> Whether an arresting officer must inform an individual less than twenty-one years of age who has been detained under the zero tolerance law that they also are or will be charged with the offense of driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor before a chemical test can be administered?

[¶ 28] Now, this Court decides the case on the basis of consent, an issue neither raised nor fully briefed to this Court. That seems to me to be neither necessary nor helpful in addressing what will remain an unanswered question under Chapter 39–20, N.D.C.C. I concur in the result reached by the majority, but I do so not because Fossum consented to the test, but because the facts of this case, under the applicable statutes, dictate the result. I believe the answer to the specific question raised on appeal by the Department should be answered, and the answer under the facts of this case is "No."

[¶ 29] The officer stopped Fossum for speeding. Fossum "had an odor of an alcoholic beverage and admitted drinking." Fossum's driver's license established that he was under 21 years of age, and his failure of the horizontal gaze nystagmus test indicated he was driving under the influence of intoxicating liquor. The officer at that point had probable cause to believe that he had observed a zero tolerance violation. The officer testified that he told Fossum he was being arrested and detained for "minor zero tolerance." Fossum testified, "He said minor and he kind of mumbled it, kind of." The Department argues that by informing Fossum he was being detained under the "minor zero tolerance" law, Fossum was adequately informed under N.D.C.C. § 39–20–01 (2011) for purposes of administering the Intoxilyzer test under *Asbridge v. N.D. State Highway Comm'r*, 291 N.W.2d 739, 747 (N.D.1980) (holding driver was provided with reasonable notice for the cause of his arrest under similar circumstances). I agree.

[¶ 30] Under N.D.C.C. § 39–20–04.1(1)(a) (2011), Fossum, under the age of 21, was subject to the administrative loss of his license for 91 days if driving with an alcohol concentration of at least two one-hundredths of one percent by weight. The officer conveyed to the driver that he was being "arrested" for "minor zero tolerance." Although the statute requires notice to the driver of the reason for detention, it would be an absurd application of the law to require notice of something other than the reason for detention.

[¶ 31] By using the word "arrest" the officer did create some confusion; the officer should have stated that he was "detaining" the driver for minor zero tolerance. However, during a fluid situation, while an officer is determining whether the officer is dealing with a criminal violation or a zero tolerance violation, the word variance between arrest and detention ought not to control so long as the driver is advised of the reason for the detention.

[¶ 32] Section 39–20–01, N.D.C.C. (2011), requires "informing that individual that the individual is or will be charged with the offense of driving or being in actual physical control ... while under the influence of intoxicating liquor...." The words in the statute that cause the problem are "charged with the offense." The zero tolerance law is not a criminal offense. But interpreted as the district court did, the statute appears to require a detaining officer to advise a person under 21 years old that he or she will be arrested under a charge for which the person can be criminally prosecuted even when the officer believes there is a zero tolerance violation and not a criminal violation. Under this interpretation, the failure to give this warning would mean the officer could not conduct a blood alcohol test for either criminal or "zero tolerance" purposes. If this construction of the statute is correct, for both criminal and zero tolerance purposes, then the district court was correct, and this Court ought to affirm the district court.

[¶ 33] Statutes are strictly construed to favor criminal defendants. *State v. Higgins*, 2004 ND 115, ¶ 13, 680 N.W.2d 645. This is not a criminal action, but an administrative proceeding. Giving N.D.C.C. § 39–20–01 the construction applied by the district court means that unless an officer incorrectly advises a driver under 21 years old that the officer intends to charge the driver with a crime, the officer cannot collect the evidence needed to establish a zero tolerance violation. Such a result is contrary to the manifest intent of the zero tolerance statute. We construe statutes to avoid absurd or illogical results that are clearly contrary to statutory intent. *Koenig v. N.D. Dep't of Transp.*, 2005 ND 95, ¶¶ 15, 16, 696 N.W.2d 534.

[¶ 34] I agree with the Department's position that section 39–20–01 requires informing the driver of a violation of the law involving driving and the use of drugs or alcohol and that Fossum was adequately informed that his violation was "minor zero tolerance." Under our precedent in *Asbridge*, this was enough to put a reasonable person on notice as to the cause of the detention. Although cryptic, "minor zero tolerance" does describe the driving violation for which Fossum was subject to license suspension because of his blood alcohol content. N.D.C.C. § 39–20–04.1. This advisement was sufficient under N.D.C.C. § 39–20–01, and it was accurate.

[¶ 35] The statute governing the hearing of this matter also makes it clear that the arrest of an individual under the age of 21 years is not an issue:

> If the issue to be determined by the hearing concerns license suspension for operating a motor vehicle while having an alcohol concentration of at least eight one-hundredths of one percent by weight or, with respect to an individual under twenty-one years of age, an alcohol concentration of at least two one-hundredths of one percent by weight, the hearing must be before a hearing officer assigned by the director and at a time and place designated by the director. The hearing must be recorded and its scope may cover only the issues of whether the arresting officer had reasonable grounds to believe the individual had been driving or was in actual physi-

cal control of a vehicle in violation of section 39–08–01 or equivalent ordinance or, with respect to an individual under twenty-one years of age, the individual had been driving or was in actual physical control of a vehicle while having an alcohol concentration of at least two one-hundredths of one percent by weight; *whether the individual was placed under arrest, unless the individual was under twenty-one years of age and the alcohol concentration was less than eight one-hundredths of one percent by weight, then arrest is not required and is not an issue under any provision of this chapter;* whether the individual was tested in accordance with section 39–20–01 or 39–20–03 and, if applicable, section 39–20–02; and whether the test results show the individual had an alcohol concentration of at least eight one-hundredths of one percent by weight or, with respect to an individual under twenty-one years of age, an alcohol concentration of at least two one-hundredths of one percent by weight. . . .

N.D.C.C. § 39–20–05(2) (2011) (emphasis added).

[¶ 36] I concur in the result.

[¶ 37] LISA FAIR McEVERS, J., concurs.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 38] I concur in the majority opinion. Under our prior case law, cited in the majority opinion, I agree that Fossum voluntarily agreed to take the chemical test.

[¶ 39] However, I also agree with Justice Kapsner's special concurrence in which she concludes that the advisement given by the officer was sufficient under N.D.C.C. § 39–20–01 and it was accurate.

[¶ 40] GERALD W. VANDE WALLE, C.J.