2014 ND 129

**Joseph P. HERRMAN, Appellant**

v.

**DIRECTOR, NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellee.**

**No. 20130338.**

Supreme Court of North Dakota.

June 24, 2014.

Rehearing Denied July 17, 2014.

Thomas F. Murtha IV, Dickinson, ND, for appellant.

Douglas Bruce Anderson, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for appellee.

CROTHERS, Justice.

[¶ 1]  Joseph P. Herrman appeals a district court judgment affirming a North Dakota Department of Transportation ("Department") decision revoking his driving privileges for one year.  We affirm, concluding sufficient probable cause existed to arrest Herrman without considering his onsite screening test and Herrman had a reasonable opportunity to consult with an attorney.  We decline to address Herrman's argument implied consent laws represent an unconstitutional condition.

I

[¶ 2]  At 8:00 p.m. on May 30, 2013, police received a report of a vehicle having difficulty maintaining its lane on Interstate 94.  Stark County Sheriff's Department Deputy Shane Holtz was in the area and waited for the vehicle to approach.  As the vehicle passed him, Deputy Holtz confirmed the license matched the reported vehicle.  Deputy Holtz observed the vehicle cross the lines dividing the lanes and miss the driving lane while exiting the Interstate.  Deputy Holtz initiated a traffic stop at 8:13 p.m.

[¶ 3]  Deputy Holtz smelled alcohol and observed Herrman's eyes were watery and bloodshot.  Herrman admitted to drinking.  Herrman had difficulty balancing while exiting his vehicle to perform field sobriety tests.  Herrman failed the horizontal gaze nystagmus test, walk-and-turn test and one-legged-stand test.  Deputy Holtz read Herrman the implied consent advisory.  At 8:20 p.m., Herrman agreed to take an onsite screening test, showing his blood-alcohol content was .196.  Herrman was arrested for driving a vehicle while under the influence of intoxicating liquor and was taken to a law enforcement center.

[¶ 4]  Deputy Holtz gave Herrman a phone book and telephone, and Herrman contacted his attorney.  At 8:50 p.m., Herrman indicated to Deputy Holtz he contacted his attorney.  Deputy Holtz again read the implied consent advisory

and requested that Herrman take a chemical breath test. Herrman said he was waiting for his attorney to call back, which Deputy Holtz testified is a commonly used ploy to postpone the test. Deputy Holtz advised Herrman he needed to decide whether to take the test. Herrman refused to consent to further testing. Deputy Holtz escorted Herrman to the jail. Immediately after Deputy Holtz returned from escorting Herrman to the jail, he received a telephone call from Herrman's attorney. The attorney stated he was speaking on behalf of Herrman, who was willing to submit to a chemical test only if Deputy Holtz obtained a warrant. Deputy Holtz neither sought a warrant nor performed a second breath test. Deputy Holtz indicated he was finished with Herrman's case at 9:06 p.m. and was available for another call.

[¶ 5] A Department hearing officer concluded Herrman was driving a vehicle under the influence of intoxicating liquor in violation of section 39–08–01, N.D.C.C. The Department revoked his driver's license for one year for refusing to submit to a chemical breath test. Herrman appealed the Department's decision. The district court affirmed the Department, holding Herrman's arrest and Deputy Holtz's request for Herrman to perform the chemical breath test at the law enforcement center were lawful. The district court held North Dakota's implied consent laws do not unconstitutionally and coercively require drivers to surrender their right to be free from unreasonable searches in exchange for receiving driving privileges. The district court did not address Herrman's argument he was denied his qualified statutory right to consult with an attorney before deciding whether to submit to testing. Herrman appealed.

II

[¶ 6] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs the review of an administrative agency decision to suspend a person's driving privileges. *Painte v. Dir., Dep't of Transp.*, 2013 ND 95, ¶ 6, 832 N.W.2d 319. We review the agency's decision on appeal from the district court. *Id.* However, "the district court's analysis is entitled to respect if it is sound." *Morrow v. Ziegler*, 2013 ND 28, ¶ 6, 826 N.W.2d 912. This Court employs a deferential standard of review for administrative proceedings:

"Under N.D.C.C. § 28–32–49, we review an appeal from a district court judgment in an administrative appeal in the same manner as allowed under N.D.C.C. § 28–32–46, which requires a district court to affirm an order of an administrative agency unless it finds:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

*Fossum v. N.D. Dept. of Transp.*, 2014 ND 47, ¶ 9, 843 N.W.2d 282 (citation omitted). "[W]e do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Id.* (citation omitted). "When an 'appeal involves the interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the agency's order is not in accordance with the law.'" *Harter v. N.D. Dep't of Transp.*, 2005 ND 70, ¶ 7, 694 N.W.2d 677 (citation omitted). We review "a claimed violation of a constitutional right [ ] de novo." *Martin v. N.D. Dep't of Transp.*, 2009 ND 181, ¶ 5, 773 N.W.2d 190 (citation omitted).

## III

[¶ 7] Herrman argues the Department hearing officer erred in the conclusions of law because the onsite screening test performed prior to Herrman's arrest was a warrantless search and no exception to the warrant requirement existed. Herrman contends that the Department's decision violated his constitutional rights under U.S. Const. amend. IV and N.D. Const. art. I, § 8, and that the results of the onsite screening test should be excluded. Herrman asserts the reading of the implied consent advisory was coercive and North Dakota's implied consent law violates the unconstitutional conditions doctrine by conditioning the grant of driving privileges on relinquishment of the constitutional right to be secure from unreasonable searches.

■ [¶ 8] Individuals operating a motor vehicle in North Dakota impliedly con-

sent to a chemical test of the blood, breath or urine, in addition to an onsite screening test of the individual's breath. N.D.C.C. §§ 39–20–01 (2011) and 39–20–14 (2011).[1] Section 39–20–04 (2011), N.D.C.C., provides that a person may refuse testing under sections 39–20–01 (2011) and 39–20–14 (2011), N.D.C.C. *See McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 12, 848 N.W.2d 659. ("A person may not be tested against his will and retains the opportunity and choice to refuse a chemical test under N.D.C.C. § 39–20–04."). Herrman agreed to take the onsite screening test, and section 39–20–14, N.D.C.C., does not apply when a person voluntarily consents to testing. *See McCoy*, at ¶ 13 (citing *see City of Bismarck v. Hoffner*, 379 N.W.2d 797, 798–99 (N.D.1985) ("It appears axiomatic to this court that implied consent is unnecessary where actual consent is given. Nor is this court convinced ... that the procedural requirements contained in the implied-consent statute should also apply to situations where actual consent is given or sought."); *State v. Abrahamson*, 328 N.W.2d 213, 215 (N.D.1982) (implied consent statute inapplicable when an individual voluntarily consents to giving blood sample and makes admissible consensual blood test results); *see also Fossum*, 2014 ND 47, ¶¶ 11–12, 843 N.W.2d 282 ("As *Hoffner* and *Abrahamson* have recognized, the purpose of the implied-consent law is to have a procedure in place when someone says no.")). Further, the arrest was performed with sufficient probable cause without considering the results of the onsite screening test.

■ [¶ 9] "A temporary restraint of a person's freedom, or a 'Terry stop,' is a seizure within the meaning of the Fourth Amendment." *City of Jamestown v. Je-*

1. Sections 39–20–01, 39–20–04 and 39–20–14, N.D.C.C., were amended effective July 1, 2013. This incident occurred on May 30, 2013, under the requirements of the previous statutes.

*rome,* 2002 ND 34, ¶ 5, 639 N.W.2d 478 (citing *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "To make a legal investigative stop of a vehicle, an officer must have a reasonable and articulable suspicion the motorist has violated or is violating the law." *Jerome,* at ¶ 5. "Determining whether an officer has a reasonable and articulable suspicion is measured by a flexible, fact-specific inquiry." *State v. Bachmeier,* 2007 ND 42, ¶ 6, 729 N.W.2d 141. "[O]bserved traffic violations provide officers with the requisite suspicion for conducting investigatory stops." *Id.* (citation omitted). Deputy Holtz observed Herrman cross the dividing line between the two lanes and miss the driving lane for an interstate exit. This provided a reasonable and articulable suspicion to perform an investigatory stop.

[¶ 10] "An arrest is a seizure and must be supported by probable cause." *Jerome,* 2002 ND 34, ¶ 5, 639 N.W.2d 478. "Probable cause to arrest a driver for driving under the influence exists if the police officer (1) observes some signs of physical or mental impairment, and (2) has reason to believe the driver's impairment is caused by alcohol." *Sayler v. N.D. Dep't of Transp.,* 2007 ND 165, ¶ 19, 740 N.W.2d 94. "In making a determination of probable cause each case must turn on the particular facts and circumstances apparent to the officer involved at the time of the arrest." *Vogel v. Dir., N.D. Dep't of Transp.,* 462 N.W.2d 129, 131 (N.D.1990). "Detection of the odor of alcohol, observation of signs of impairment, and failure of field sobriety tests are relevant factors in determining probable cause to arrest a driver for driving under the influence of alcohol." *City of Devils Lake v. Grove,* 2008 ND 155, ¶ 11, 755 N.W.2d 485. Deputy Holtz smelled alcohol on Herrman and observed he had bloodshot eyes. Herrman displayed a lack of balance and was unable to perform the walk-and-turn and one-legged-stand tests. Herrman admitted to consuming alcohol that night. Deputy Holtz had probable cause to arrest Herrman with or without considering the results of the onsite screening test. We therefore decline to address Herrman's claim the advisory unconstitutionally coerced his consent to take the test. *See State v. Waters,* 542 N.W.2d 742, 745 (N.D. 1996) ("[C]ourts should 'refrain from deciding constitutional questions if they can decide a dispute on other grounds.'" (citation omitted)).

IV

[¶ 11] Herrman argues the Department hearing officer erred in the conclusions of law because the unconstitutional conditions doctrine applies to North Dakota's implied consent law and requires a warrant for the search. Herrman specifically argues that law enforcement invoking the implied consent advisory at the police station and requesting the second breath test forced him to surrender his privilege to drive if he refused to give consent to the search. Herrman asserts law enforcement used the implied consent law to circumvent the search warrant requirement. Herrman argues it is unconstitutional for him to lose his driving privileges because of his refusal to consent to an otherwise illegal search. Herrman refused to take this second breath test at the police station, and he does not challenge the coerciveness of the implied consent advisory and requested breath test at the police station.

[¶ 12] Herrman makes his argument under *Frost v. R.R. Comm'n of State of Cal.,* 271 U.S. 583, 593–94, 46 S.Ct. 605, 70 L.Ed. 1101 (1926), similar to the argument this Court addressed in *McCoy,* 2014 ND 119, ¶¶ 25–28, 848 N.W.2d 659 (arguing that "North Dakota's implied consent law conditions the privilege of driving on a

driver's surrender of the right to be free from unreasonable searches, presenting an 'unconstitutional condition' "). In *McCoy,* we discussed that "driving is not a constitutional right but a privilege subject to reasonable control of the State under its police power." *Id.* at ¶ 26. We emphasized North Dakota continues to increase prohibitions and penalties for driving under the influence in response to the carnage on our nation's highways. *Id.* This Court declined to address the issue because the arguments made under *Frost* challenging the constitutionality of the implied consent laws were not briefed or argued in a meaningful way by either party. *McCoy,* at ¶ 28. Herrman's arguments here mirror the arguments made in *McCoy* and similarly insufficiently address whether implied consent laws represent an unconstitutional condition under *Frost.* Therefore, we decline to address Herrman's argument he was forced to surrender his privilege to drive if he refused to consent to a search after law enforcement invoked the implied consent advisory at the police station and requested the second breath test.

### V

[¶ 13] Herrman argues he was denied his statutory right to consult with an attorney before deciding whether to submit to the breath test requested at the station after his arrest. Herrman raised the issue before the Department, but the Department may only make limited conclusions of law about whether a law enforcement officer had reasonable grounds to believe the person was driving under the influence, whether the person was placed under arrest and whether the person refused to submit to the test or tests. N.D.C.C. § 39–20–05(3) (2011). The Department is unable to decide whether Herrman was given his statutory right to consult with an attorney. *Id.* Herrman raised the issue in his specification of error

to the district court, but the district court sitting as an appellate tribunal did not address the issue. Under these circumstances, we address the issue based on the facts in the Department's record.

[¶ 14] "Whether a person has been afforded a reasonable opportunity to consult with an attorney is a mixed question of law and fact." *Wetzel v. N.D. Dep't of Transp.,* 2001 ND 35, ¶ 10, 622 N.W.2d 180. This Court "review[s] mixed questions of law and fact under the de novo standard of review." *Id.* "[A] person arrested for driving under the influence of intoxicating liquor has a qualified statutory right to consult with an attorney before deciding whether to submit to a chemical test[.]" *Baillie v. Moore,* 522 N.W.2d 748, 750 (N.D.1994).

> "We hold that if an arrested person asks to consult with an attorney before deciding to take a chemical test, he must be given a reasonable opportunity to do so if it does not materially interfere with the administration of the test. If he is not given a reasonable opportunity to do so under the circumstances, his failure to take the test is not a refusal upon which to revoke his license under Chapter 39–20, N.D.C.C."

*Kuntz v. State Highway Comm'r,* 405 N.W.2d 285, 290 (N.D.1987).

[¶ 15] The Department hearing officer found Herrman was provided a telephone and phone book to contact his attorney after he arrived at the police station. Deputy Holtz observed Herrman over the closed circuit monitors. He saw Herrman using the telephone and returned when Herrman appeared to complete his phone call. Herrman told Deputy Holtz he was able to contact his attorney. Deputy Holtz then asked Herrman to take another breath test, and Herrman said he was waiting for his attorney to call him

back. Herrman indicated he did not know when his attorney would call back, which Deputy Holtz testified was a common ploy used to pass additional time. Deputy Holtz told Herrman that he must decide whether to take the test and that if he declines, it will be considered a refusal. Deputy Holtz took Herrman to jail, and when he returned Herrman's attorney was on the line. Herrman's attorney stated he was speaking on behalf of Herrman, who would not submit to a test without a warrant. The attorney did not ask to speak with Herrman. Deputy Holtz did not seek a warrant and did not perform a second breath test, thereby complying with Herrman's refusal and his attorney's conditions on performing the test. Based on these facts, we conclude Herrman was afforded a reasonable opportunity to consult an attorney before refusing the test.

### VI

[¶ 16] Police had sufficient probable cause to arrest Herrman without considering his onsite screening test. We decline to address whether invoking the implied consent advisory and requesting a second breath test forced Herrman to surrender his privilege to drive if he refused to consent. The Department did not err in revoking Herrman's license. We affirm the district court judgment affirming the Department's decision revoking Herrman's driving privileges for one year.

[¶ 17]   GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.